## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **STATE OF KANSAS**, *ex rel.* | ) | |
| **KRIS W. KOBACH**, Attorney General, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:24-cv-01128-DDC-BGS |
| | ) | |
| **PFIZER INC.**, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO REMAND AND FOR AWARD OF ATTORNEY'S FEES

The State of Kansas filed state claims against Pfizer in state court. Kansas alleges that Pfizer made statements falsely representing the benefits of its COVID-19 vaccine while concealing and suppressing the truth about its vaccine's safety risks, waning effectiveness, and inability to prevent transmission. Pet., ¶ 9. Based on these statements, Kansas charges Pfizer with violating three consent judgments entered in state court and the Kansas Consumer Protection Act ("KCPA"). *See* Pet., Counts I-X.

Pfizer acknowledges that Kansas' Petition is not removable based on federal question or diversity jurisdiction by not asserting either one. Still searching for a path to federal court, Pfizer raises three "rare" and "exceedingly narrow" removal exceptions that are clearly inapplicable here.

First, Pfizer fails to establish federal officer removal jurisdiction. Pfizer was not "acting under" the direction of a federal officer. Contrary to its representations in this action, Pfizer has previously claimed its contract required only delivery of an approved vaccine. Pfizer's contract also undermines its arguments, including by expressly allowing Pfizer to publish COVID-19 vaccine information without the federal government's supervision. In addition, Kansas' claims about Pfizer's misleading public statements have no connection or association with government-

1

directed conduct, just like courts have found in other consumer protection cases brought by attorneys general that alleged public misrepresentations.  Further, Pfizer does not have a colorable federal defense to Kansas' claims because they are not federal defenses, do not arise out of Pfizer's official duties, or lack evidence.

Second, Pfizer fails to establish the *Grable* doctrine.  Pfizer has not identified any federal issue that is "necessarily raised" by Kansas' Petition or is "actually disputed" in this case.  Even if it had, Pfizer has failed to demonstrate that any federal issue is "substantial."  Furthermore, exercising federal jurisdiction here would disrupt the federal-state balance approved by Congress.

Finally, Pfizer fails to establish complete preemption under the PREP Act.  Nearly all federal courts have concluded that the PREP Act is not a complete preemption statute.  Despite this overwhelming authority, Pfizer relies on ordinary preemption and deference arguments that numerous courts already have rejected.

Pfizer has failed to satisfy its burden of proof to establish federal jurisdiction and overcome the presumption against jurisdiction.  The Court should remand the case.  In addition, the Court should award attorney's fees to Kansas because Pfizer raised "manifestly weak" removal arguments that were not "objectively reasonable."

## LEGAL STANDARD

The jurisdiction of federal courts is "limited."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "[T]here is a presumption against [federal] jurisdiction, and the party invoking federal jurisdiction bears the burden of proof."  *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005) (citation omitted).  Accordingly, "statutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction." *Bd. of*

*Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1250 (10th Cir. 2022) (citation omitted).

## **ARGUMENT**

### I.    **Federal Jurisdiction Does Not Exist Under the Federal Officer Removal Statute.**

To establish jurisdiction under 28 U.S.C. § 1442(a), Pfizer has the burden to show that (1) it "acted under the direction of a federal officer," (2) "the claim has a connection or association with government-directed conduct," and (3) it has "a colorable federal defense to the claim or claims." *Suncor Energy*, 25 F.4th at 1251. Failure to establish a single element defeats federal officer removal. *Id.* at 1254. Pfizer has failed to establish any of the three elements.

### A.    **Pfizer was not "acting under" the direction of a federal officer.**

"Acting under" describes "the triggering relationship between a private entity and a federal officer." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 149 (2007). "Acting under" is "'broad,' but 'not limitless.'" *Suncor Energy*, 25 F.4th at 1251 (quoting *Watson*, 551 U.S. at 147). As a case cited by Pfizer (Doc. 1, ¶ 7) explained, "[w]hile federal officer removal is read 'expansively' in suits involving federal officials, it is read 'narrowly where . . . only the liability of a private company purportedly acting at the direction of a federal officer is at issue.'" *New Mexico ex rel. Balderas v. Monsanto Co.*, 454 F. Supp. 3d 1132, 1139 (D.N.M. 2020) (citation omitted).

The Tenth Circuit determined whether a private entity "acted under" a federal officer's direction based on factors such as "subjection, guidance, or control;" "detailed government specifications;" "close supervision;" "specially for the government's use;" "compulsion;" and "delegation of legal authority." *See Suncor Energy*, 25 F.4th at 1251-54. Pfizer has failed to satisfy any of these factors.

1.      **No federal control**

Pfizer has failed to present evidence demonstrating "a relationship between private entity and federal superior … involving 'subjection, guidance, or control.'"  *Suncor Energy*, 25 F.4th at 1251 (quoting *Watson*, 551 U.S. at 151) (second quotation marks omitted).  Pfizer claims the Statement of Work and a Defense Production Act "modification" contain multiple "specific terms for Pfizer's performance of the contract."[1]  Doc. 1, ¶¶ 18, 21-22.

Pfizer's representations in this case about its many contractual conditions directly contradict its representations in a contract-based *qui tam* action.  *See* Pfizer's Mot. to Dismiss Relator's Am. Compl. and Memo. of Law in Supp., ECF No. 37, *United States ex rel. Jackson v. Ventavia Research Group, LLC, et al.*, No. 1:21-cv-00008 (E.D. Tex. Apr. 22, 2022), attached as Exhibit 1.  In *Jackson*, Pfizer claimed its COVID-19 vaccine contract "identifies a *single condition of payment*: Pfizer's delivery of an FDA authorized or approved vaccine for COVID-19."  *Id.* at 8 (PDF p. 13) (emphasis added); *see also id.* at 21 (PDF p. 26).  Pfizer reported "the agreement is crystal clear" that delivery was the only contract condition.  *Id.* at 13-14 (PDF pp. 18-19).  Contrary to its representations in this action, Pfizer specifically rejected the "allegation that the [Statement of Work] somehow tied payment to Pfizer's compliance with every particular of the clinical protocol or related FDA regulations" as "mistaken and refuted by the [Statement of Work] itself."  *Id.* at 8 (PDF p. 13).  According to Pfizer, the Statement of Work "states explicitly that Pfizer's 'clinical trials' are 'out-of-scope,' 'not related' to the agreement, and that the relevant studies were undertaken at Pfizer's expense 'without the use of Government funding.'"  *Id.*

---

[1] Pfizer did not submit the Defense Production Act "modification" as evidence to allow evaluation of its assertions.  "The party seeking removal must provide 'actual proof of jurisdictional facts.'"  *Wollenberg v. Blue Cross & Blue Shield of Kansas, Inc.*, No. 23-CV-04029-TC-TJJ, 2024 WL 1485891, at *1 (D. Kan. Apr. 5, 2024) (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008)).  The Court thus should disregard Pfizer's Defense Production Act arguments.

In addition to this stark inconsistency, Pfizer did not identify specific government "subjection, guidance, or control." *Suncor Energy*, 25 F.4th at 1251. For example, Pfizer maintained control over some items: the "anticipated dates for deliverables," Doc. 1, ¶ 18, contain "Pfizer's best estimate" of the timeline, Pfizer Ex. B, § 4.0 (p. 15)[2]; and Pfizer enjoyed a broad liability waiver for any missed deadlines, *id.* at § 11.6 (p. 25). Other items, like developing plans or reporting obligations, Doc. 1, ¶ 18, mirror compliance with regulatory requirements. *Massamore v. RBRC, Inc.*, 595 F. Supp. 3d 594, 603 (W.D. Ky. 2022) ("Nor do the Defendants offer anything to distinguish their need to abide by mandatory reporting requirements from 'simply *complying* with the law.'") (emphasis original) (quoting *Watson*, 551 U.S. at 152). And some items do not appear to be directives at all, such as "allowing Pfizer priority access to key vaccine components" under the Defense Production Act "modification." Doc. 1, ¶ 21; *see City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1108 (9th Cir. 2022) ("compliance with the [Defense Production Act] was only lawful obedience," and "[t]hat is not enough") (citations omitted).

Pfizer has failed to show that it went "beyond mere compliance with contractual terms, even if complex, and agree[d] to help carry out the duties or tasks of the federal superior under that superior's strict guidance or control." *Suncor Energy*, 25 F.4th at 1253. Pfizer's "acting under" argument should be rejected because Pfizer's only contractual requirement to be paid was delivering an approved COVID-19 vaccine.

## 2. No detailed specifications

Pfizer does not claim, and its documents do not contain, contract terms that required it to "tailor . . . production to detailed government specifications." *Suncor Energy*, 25 F.4th at 1253. These "detailed specifications" could concern "the make-up, packaging, and delivery" of the

---

[2] For clarity, Kansas cites the ECF page numbers for Pfizer's exhibits.

COVID-19 vaccine. *Id.* at 1252 (quoting *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 400 (5th Cir. 1998)). In fact, Pfizer maintained total control over each of these topics.

*Make-up*. Pfizer does not claim, and its documents do not contain, government specifications about the "specific mixture" for the COVID-19 vaccine. *Compare* Pfizer Ex. B, pp. 4-6 (describing Pfizer's independent work on a vaccine candidate) *with Winters*, 149 F.3d at 398-99 (detailing government mixture specifications). Instead, Pfizer's contract described "activities undertaken without government funding." *See* Pfizer Ex. B, § 1.1.2 (pp. 6-11). One such activity was "Chemistry Manufacturing Controls," *id.* at § 1.1.2(C) (pp. 9-11), which included "Drug Substance Development" and "Drug Product Development." *Id.* at p. 10.

*Packaging*. Pfizer does not claim, and its documents do not contain, government specifications about the packaging for Pfizer's COVID-19 vaccine. *Compare* Pfizer Ex. B *with Winters*, 149 F.3d at 399 ("No warning was placed on the containers, and none was permitted by the contract specifications."). Instead, in the context of shipping—another Pfizer activity "undertaken without government funding"—Pfizer was evaluating "extension of current clinical packaging configuration." Pfizer Ex. B, p. 11. In the next sentence, Pfizer "aspir[ed] to undertake other "discrete activities" without government funding, but the specific items are redacted.[3] *Id.*

*Delivery*. Pfizer does not claim, and its documents do not contain, government specifications about the delivery of Pfizer's COVID-19 vaccine. To the contrary, the contract indicates that Pfizer was preparing the "specifications and details associated with the shipping

---

[3] Pfizer's exhibits contain extensive redactions that appear related to a Freedom of Information Act response. *See* Pfizer Ex. B, pp. 2-3, 5-6, 8-19, 21, 23, 25-27; *see also* Pfizer Ex. A, pp. 3, 20, 56. As an agreement signatory, Pfizer has unredacted versions of these documents that it has not submitted as evidence. Any question about what the redactions contain should be construed against Pfizer. *Cf. Suncor Energy*, 25 F.4th at 1250 ("doubts resolved against federal jurisdiction").

process" and that each ship-to location would "abide by the specifications provided by Pfizer." *Id.* at § 6.0 (p. 19). Although Pfizer relies on the "anticipated dates for deliverables to the Government" as a purported contract condition, Doc. 1, ¶ 18, those dates remained entirely within Pfizer's control. *See* Part I.A.1, *supra*; *see also* Sydney Lupkin, *The U.S. Paid Billions to Get Enough COVID Vaccines Last Fall. What Went Wrong?*, NPR (Aug. 25, 2021).[4] In fact, Pfizer was "in the driver's seat in terms of what the deadlines [would] be." *Id.*

Pfizer argues that removal is justified because "it manufactured an FDA-approved or authorized COVID-19 vaccine." Doc. 1, ¶ 22. But in addition to the contract provisions that vested Pfizer with sole authority over the manufacturing process, Pfizer undertook "Regulatory Planning" without government funding. Pfizer Ex. B, § 1.1.2(A) (p. 6). The contract also specifically disclaimed any contractual regulation of this process: "Given that these clinical trials are regulated by the FDA and HHS, there is no need for separate regulation by the U.S. Army Medical Research and Material Command." *Id.* "A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" *Watson*, 551 U.S. at 153. For that matter, Pfizer has separately argued that the type of agreement it entered was not even subject to "the primary regulation otherwise used by Government agencies in their acquisition of supplies and services with appropriated funds." Ex. 1, at 7.

Pfizer's contract lacked "detailed government specifications" to produce the COVID-19 vaccine. *Suncor Energy*, 25 F.4th at 1253. "Removal is allowed only when the acts of Federal defendants are essentially ordered or demanded by Federal authority … " *Cnty. of San Mateo v.*

---

[4] *Available at* https://www.npr.org/sections/health-shots/2021/08/25/1029715721/pfizer-vaccine-operation-warp-speed-delay.

*Chevron Corp.*, 32 F.4th 733, 759 (9th Cir. 2022) (quoting H.R. Rep. No. 112-17, pt. 1, at 3 (2011)). Pfizer's "acting under" argument should be rejected because the government did not require compliance with detailed specifications.

### 3.    No close supervision

Pfizer does not claim, and its documents do not contain, any "close supervision" by the federal government. *See Suncor Energy*, 25 F.4th at 1252-53.  The government did not control the manner in which Pfizer "develop[ed] and produce[d] the product" or "how much [vaccine] to sell." *Id.* at 1253 (quotation omitted).  As already discussed, Pfizer retained control over the "Drug Substance Development" and "Drug Product Development."  Pfizer Ex. B, § 1.1.2 (p. 10).  Instead of taking directives from the government on how much vaccine to sell, Pfizer was working "to commercialize the vaccine upon regulatory approval." *Id.* at § 1.1.1 (p. 6).  "[T]he government's off-the-shelf purchase of a defendant's product does not show that the government 'supervised [the defendant's] manufacture . . . or directed [the defendant] to produce [the product] in a particular manner, so as to come within the meaning of 'act[ed] under'." *Suncor Energy*, 25 F.4th at 1253 (quoting *Washington v. Monsanto Co.*, 738 F. App'x 554, 555 (9th Cir. 2018)); *see also Doe v. BJC Health Sys.*, 89 F.4th 1037, 1043 (8th Cir. 2023) (federal officer removal requires that "[t]he party does the business of the federal government and not merely its own.").

Although Pfizer claims federal officer removal because "it sold and delivered that vaccine to the Government as part of Operation Warp Speed," Doc. 1, ¶ 22, Pfizer did not join Operation Warp Speed to avoid government supervision of its vaccine development.[5]  *See* Pet., ¶ 35 (citing

---

[5] Pfizer's decision to not join Operation Warp Speed distinguishes this case from the Sixth Circuit decision cited by Pfizer.  Doc. 1, ¶ 15 (citing *Goins v. Saint Elizabeth Med. Ctr., Inc.*, No. 22-6070, 2024 WL 229568, at *3 (6th Cir. Jan. 22, 2024)).  *Goins* is further distinguishable based on the claims at issue.

*Transcript, Pfizer CEO Dr. Albert Bourla on 'Face the Nation*,'" CBS News (Sept. 13, 2020)[6]). Pfizer's CEO admitted the reason the company refused government funding was "to liberate our scientists from any bureaucracy.  When you get money from someone that always comes with strings.  They want to see how we are going to progress, what type of moves you are going to do. They want reports.  I didn't want to have any of that."  *Id.*  Because the government was not funding Pfizer's vaccine development, the government surrendered statutory rights to "march-in" or subject Pfizer to certain manufacturing requirements.  Pfizer Ex. B, § 7.1 (p. 20).  In short, "[t]he government had limited visibility into what was happening at Pfizer" because "Pfizer worked 'at arm's length'."  Pet., ¶¶ 36-37 (citing Lupkin, note 4, *supra*).

Importantly, on the central issue in Kansas' lawsuit, Pfizer's contract did not "affect the content or methods of [Pfizer's] communications with customers, consumers, and others about" its COVID-19 vaccine.  *Suncor Energy*, 25 F.4th at 1253 (quoting *Mayor & City Council of Baltimore v. BP P.L.C.*, 952 F.3d 452, 466 (4th Cir. 2020), *vacated and remanded,* 593 U.S. 230 (2021)).[7]  In fact, Pfizer's contract explicitly allowed Pfizer to publish COVID-19 information without the government's supervision: "Pfizer … shall have the right, but not the obligation, to prepare and submit scientific publications and release information to the public about its Covid-19 development program, without the Government's consent or involvement."  Pfizer Ex. B, § 11.11 (p. 26).

Pfizer's contract "do[es] not appear to contemplate the type of 'close supervision of the private entity by the [g]overnment' needed to bring a government contractor relationship within

---

[6] *Available at* https://www.cbsnews.com/news/transcript-pfizer-ceo-dr-albert-bourla-on-face-the-nation-september-13-2020/.
[7] Following remand, the Fourth Circuit adopted its prior opinion on federal officer removal, including on this point.  *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 232 (4th Cir. 2022).

the meaning of § 1442." *Suncor Energy*, 25 F.4th at 1253.  Pfizer's "acting under" argument should be rejected because the government was not "closely supervising" Pfizer's activities.

### 4.    Not specially for the government's use

Pfizer does not claim, and its documents do not contain, any evidence that contracts obligated Pfizer "to make a product specially for the government's use." *Suncor Energy*, 25 F.4th at 1253.  Pfizer indicates that the federal government was not even the only American purchaser of the vaccine.  *See* Doc. 1, ¶ 19 ("the Government became the *principal* U.S. purchaser of the vaccine") (emphasis added).  And Pfizer announced that as of January 2024, it had "shipped more than 4.9 billion vaccine doses to 183 counties and territories around the world."[8]  Pfizer, *Manufacturing, Trade and Equitable Global Access to COVID-19 Vaccines and Therapeutics*.[9]  Pfizer sold only a fraction of these vaccine doses to the federal government, as the contract documents that Pfizer submitted involved 100 million vaccine doses, Pfizer Ex. B, § 5.0 (p. 18), with the ability of the parties to enter into a follow-on contract for up to 500 million more doses, *id.* at § 1.3(b) (pp. 12-13).  In short, Pfizer produced its COVID-19 vaccine "'to sell on the open market,' not specifically for the government."  *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 713 (3d Cir. 2022) (citation omitted).

Pfizer implies, but does not expressly argue, removal because it "help[ed] the Government to produce an item that it needs."  Doc. 1, ¶ 15 (citation omitted).  But "such logic would bring

---

[8] The Court may "take judicial notice of facts 'at any stage of the proceeding' if the facts are 'not subject to reasonable dispute.'"  *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1212-13 (10th Cir. 2012) (citing Fed. R. Evid. 201); *see also DeFiore v. SOC LLC*, 85 F.4th 546, 553 n.1 (9th Cir. 2023) ("materials of which a district court may take judicial notice are not considered extrinsic evidence for purposes of Rules 12(b)(1) and 12(b)(6) and, by extension, a motion to remand").  Pfizer cannot reasonably dispute facts it has published.

[9] *Available                                                                                        at* https://cdn.pfizer.com/pfizercom/PFE_COVID_Equitable_Global_Access_15FEB2024.pdf.

every seller of contracted goods and services within the ambit of § 1442 when the government is a customer." *Mayor & City Council of Baltimore*, 31 F.4th at 230. "[A] person is not 'acting under' a federal officer when the person enters into an arm's-length business arrangement with the federal government or supplies it with widely available commercial products or services." *Cnty. of San Mateo*, 32 F.4th at 757. Moreover, vaccine production is not a "basic governmental task." *City & Cnty. of Honolulu*, 39 F.4th at 1108; *see also BJC Health Sys.*, 89 F.4th at 1043.

"Critically, the [agreements] do not obligate [Pfizer] to make a product specially for the government's use, . . ." *Suncor Energy*, 25 F.4th at 1253. Pfizer's "acting under" argument should be rejected because Pfizer was not manufacturing the COVID-19 vaccine specially for the government's use.

### 5. No compulsion to produce

Pfizer does not claim, and its documents do not contain, any "compulsion to provide the product to the government's specifications." *Suncor Energy*, 25 F.4th at 1252 (quoting *Winters*, 149 F.3d at 400). In *Winters*, "the defendants were compelled to deliver Agent Orange to the government under threat of criminal sanctions." *Winters*, 149 F.3d at 398.

Not so here. Pfizer's contract documents provided that "Pfizer shall have no liability for any failure to develop, obtain or maintain U.S. regulatory approval or authorization of such a vaccine in accordance with the estimated schedule described in this Statement of Work." Pfizer Ex. B, § 11.6 (p. 25). Similarly, even if a vaccine received approval, "Pfizer shall have no liability for any failure to deliver doses in accordance with the estimated delivery dates set forth in this Statement of Work to the extent any such change in delivery dates is based on emerging data, regulatory guidance, manufacturing and technical developments, or other risks outside Pfizer's

control." *Id.* Instead of compelling Pfizer to produce a certain amount of vaccine by a certain date, Pfizer's contract documents did the opposite and exempted Pfizer from any liability.

Pfizer's "acting under" argument should be rejected because Pfizer was not under compulsion to produce the COVID-19 vaccine for the government.

### 6.    No legal delegation

Pfizer does not claim, and its documents do not contain, an "explicit contractual delegation of legal authority to act on the federal superior's behalf." *Suncor Energy*, 25 F.4th at 1253. Federal officer removal is available "'only' if [the private parties] were 'authorized to act with or for [federal officers or agents] in affirmatively executing duties under . . . federal law.'" *Watson*, 551 U.S. at 151 (quoting *City of Greenwood v. Peacock*, 384 U.S. 808, 824 (1966)). Thus, a "private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Suncor Energy*, 25 F.4th at 1251 (citation omitted) (emphasis original).

The contract documents Pfizer submitted contain some explicit authority delegation, just not to Pfizer. The Base Agreement is between Pfizer and Advanced Technology International ("ATI"). *See* Ex. A, § 1.02 (p. 10) (defining "Parties"). ATI is not part of the federal government, but is a 501(c)(3) organization, *id.* at § 3.03 (p. 19), that "bypass[ed] the regulatory oversight and transparency of traditional federal contracting mechanisms" to "award[] contracts to companies working on COVID-19 vaccines," Sydney Lupkin, *How Operation Warp Speed's Big Vaccine Contracts Could Stay Secret*, NPR (Sept. 29, 2020).[10] Accordingly, the federal government delegated authority to ATI to enter the contract with Pfizer. *See* Ex. A, § 1.02 (pp. 8, 9) (defining

---

[10] *Available at* https://www.npr.org/sections/health-shots/2020/09/29/917899357/how-operation-warp-speeds-big-vaccine-contracts-could-stay-secret.

"Agreements Officer Representative" and "Contracting Activity"); § 3.03 (p. 19) (describing process).

In contrast, neither the Base Agreement nor the Statement of Work expressly delegates authority to Pfizer. *See* Pfizer Exs. A, B. In fact, Pfizer's Statement of Work does not even use the word "delegate." *See* Pfizer Ex. B. Instead, the Statement of Work lists activities—regulatory planning, clinical development, and chemistry and manufacturing controls—that Pfizer "[has] been performing and will continue to perform without use of Government funding." *Id.* at § 1.1.2 (pp. 6-11). The government "acknowledge[d] that it is not funding the research or development of the vaccine, or CMC/process development in respect thereof." *Id.* at § 7.1 (p. 20).

"[N]either Congress nor federal agencies normally delegate legal authority to private entities without saying that they are doing so." *Suncor Energy*, 25 F.4th at 1254 (quoting *Watson*, 551 U.S. at 157). The federal government expressly delegated authority to ATI, but not to Pfizer.[11] In addition, it is unclear whether the federal government even could delegate authority to both sides of an agreement.

"None of the provisions of the [Pfizer contract] 'establish the type of formal delegation that might authorize [Pfizer] to remove the case.'" *Id.* (quoting *Watson*, 551 U.S. at 156). Pfizer's

---

[11] To the extent any of ATI's actions were as a government contractor, district courts have rejected federal officer removal when a contract was between a private party and a government contractor, rather than the government. In a case cited by Pfizer (Doc. 1, ¶ 7), a court in this circuit found that the "vast majority" of PCB sales at issue "were to government contractors rather than to the Government itself." *New Mexico ex rel. Balderas*, 454 F. Supp. 3d at 1140. "This is insufficient to confer 'federal officer' jurisdiction," concluded the court as it granted the motion to remand. *Id.* Other district courts also granted motions to remand when a company "by and large" sold to government contractors and not to the government itself. *See Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853, 870 (E.D. Mo. 2016); *Kelly v. Monsanto Co.*, No. 4:15CV1825, 2016 WL 3543050, at *1 (E.D. Mo. June 19, 2016). Pfizer's press release announcing a contract "with U.S. Government," which the Petition cited (at ¶ 42), does not disclose that ATI was the actual agreement signatory.

"acting under" argument should be rejected because Pfizer was not delegated legal authority to act on the federal government's behalf.

* * *

"[T]he removal statute's 'basic' purpose is to protect the Federal Government from the interference with its 'operations' that would ensue were a State able, for example, to 'arres[t]' and bring 'to trial in a State cour[t] for an alleged offense against the law of the State,' 'officers and agents' of the Federal Government 'acting … within the scope of their authority.'" *Watson*, 551 U.S. at 150 (alterations in original) (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)). This purpose is not advanced by removal here. Because Pfizer "has not established that it acted under a federal officer by complying with the terms of its [contracts]," the Court "do[es] not need to reach the remaining elements for federal officer removal." *Suncor Energy*, 25 F.4th at 1254.

> **B.    Kansas' claims have no connection or association with government-directed conduct.**

Pfizer also must show "a connection or association with government-directed conduct." *Suncor Energy*, 25 F.4th at 1251. "It is the 'act' for which the defendant is being sued—not the plaintiff's entire civil action in a general sense—that must relate to the asserted federal duty." *Anne Arundel Cnty., Maryland v. BP P.L.C.*, 94 F.4th 343, 348 (4th Cir. 2024). As Pfizer recognizes (Doc. 1, ¶ 25), Kansas' claims relate to Pfizer's misleading public statements about its COVID-19 vaccine.

Removal arguments like Pfizer's have been repeatedly rejected by the courts of appeals in cases, like this, involving government lawsuits alleging misleading private company statements. In the First Circuit, Rhode Island alleged that oil companies "engaged in a misinformation campaign about the harmful effects of their products on the earth's climate." *Rhode Island v. Shell Oil Prod. Co.*, 35 F.4th 44, 53 n.6 (1st Cir. 2022) (citation omitted). The contracts at issue

14

"mandate[] none of those activities," *id.*, and thus "[t]here is simply no nexus between anything for which Rhode Island seeks damages and anything the oil companies allegedly did at the behest of a federal officer." *Rhode Island v. Shell Oil Prod. Co.*, 979 F.3d 50, 60 (1st Cir. 2020), *cert. granted, judgment vacated,* 141 S. Ct. 2666 (2021). Similarly, in holding that "no such causal nexus" existed between a government contractor and an alleged "campaign of deception" underlying a State's consumer protection claims, the Second Circuit found "a total mismatch between the business practices that Exxon Mobil asserts were subject to federal control and supervision (its actual production of fossil fuels) and the business practices of which Connecticut complains (its marketing and public-relations campaigns to assuage consumers' fears about the environmental impacts of those fossil fuels)." *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 145 (2d Cir. 2023). In another case, the Fourth Circuit found that "'detailed branding and advertising requirements' cited by Defendants have absolutely nothing to do with" misleading marketing allegations. *Mayor & City Council of Baltimore*, 31 F.4th at 231 n.21. Finally, in a case involving a State's consumer protection claims, the Eighth Circuit found that "[t]he Energy Companies' production of military-grade fuel, operation of federal oil leases, and participation in strategic energy infrastructure, even if done at federal direction, bears little to no relationship with how they conducted their marketing activities to the general public." *Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 715 (8th Cir. 2023). The Eighth Circuit rejected federal officer removal because "none of Minnesota's claims try to hold the Energy Companies liable for production activities—only marketing." *Id.*

Like these decisions by the First, Second, Fourth, and Eighth Circuits, Pfizer's contract is not related to Kansas' allegations regarding public statements. In fact, pursuant to the Statement of Work, "Pfizer had exclusive control over its own communications through 'the right, but not

the obligation, to prepare and submit scientific publications and release information to the public about its COVID-19 development program, without the Government's consent or involvement.'" Pet., ¶ 60 (quoting Pfizer Ex. B, § 11.11 (p. 26)).  Thus, not only did the government not direct Pfizer's misleading public statements, but the contract also specifically exempted them from any government oversight.

Contrary to Pfizer's claims (Doc. 1, ¶¶ 24-26), none of Kansas' claims are connected to or associated with conduct directed by the federal government.  As described in Section I, the government did not direct any of Pfizer's conduct.  But even if the Court found that the government directed Pfizer's delivery of a vaccine, Kansas' claims relate to false statements that do not arise out of the delivery process.  *Contra Goins*, 2024 WL 229568, at *4.  Kansas' claim alleging that Pfizer conspired to conceal or suppress material facts about its COVID-19 vaccine is unrelated to its contract and was not directed by the government, and Pfizer does not argue otherwise.  Doc. 1, ¶ 26.

Kansas' claims against Pfizer do not have "a connection or association with government-directed conduct."  *Suncor Energy*, 25 F.4th at 1251.  Federal officer removal thus fails.

### C.    Pfizer does not have a colorable federal defense to Kansas' claims.

Finally, Pfizer has failed to establish that this action will "deprive federal officials of a federal forum in which to assert federal immunity defenses."  *Watson*, 551 U.S. at 150.  Pfizer hurls seven different defenses in the hope that one of them will stick.  None do.

Some of Pfizer's defenses are not "federal defenses."  Pfizer cites no authority holding that the primary jurisdiction doctrine or the political question doctrine are federal defenses.  Nor does Pfizer present authority allowing a defense that *divests* a federal court of subject matter jurisdiction to *vest* a federal court with subject matter jurisdiction for purposes of removal.  Courts have found

otherwise.  The political question doctrine "is prudential in nature and does not determine whether jurisdiction can be exercised over the case in the first instance." *Cloyd v. KBR, Inc.*, No. 21-20676, 2022 WL 4104029, at *5 n.4 (5th Cir. Sept. 8, 2022).  A similar "logical inconsistency" is raised by "allowing an action to be removed to federal court because it may have been originally brought there, yet also requiring the same court to dismiss it because an administrative agency has primary jurisdiction." *Est. of Cowan v. LP Columbia KY, LLC*, 530 F. Supp. 3d 695, 701 (W.D. Ky. 2021).

Pfizer also failed to "raise a defense arising out of [its] official duties." *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981).  "Most defenses do not flow from official duties." *City & Cnty. of Honolulu*, 39 F.4th at 1110.  For example, Pfizer asserts a First Amendment defense for its public statements.  Doc. 1, ¶¶ 52-56.  "Even if this defense is colorable," and it is not, "it does not arise from official duties, as [Pfizer] do[es] not contend that the government ordered their allegedly deceptive acts." *City & Cnty. of Honolulu*, 39 F.4th at 1110.  To the contrary, Pfizer retained control over its public statements. *See* Pfizer Ex. B, § 11.11 (p. 26).  Pfizer's preemption, PREP Act, primary jurisdiction, and political question defenses "similarly do not arise from official duties." *City & Cnty. of Honolulu*, 39 F.4th at 1110.

Pfizer's immunity defenses fare no better.  Pfizer lacks evidence supporting its Defense Production Act defense. *See* note 1, *supra*.  Pfizer's description of the Defense Production Act "modification" "do[es] not indicate that [Pfizer] was being forced to produce anything it was not already producing." *New Mexico ex rel. Balderas*, 454 F. Supp. 3d at 1145.  Pfizer also "[has] pointed to no 'rule, regulation, or order issued pursuant to [the] Act' compliance with which has exposed them to liability." *Anderson v. Hackett*, 646 F. Supp. 2d 1041, 1053 (S.D. Ill. 2009) (quoting 50 U.S.C. § 4557); *see also Rucker v. Monsanto Co.*, No. 23-CV-00868, 2023 WL 3494716, at *2 (S.D. Ill. May 17, 2023).  And Pfizer's derivative sovereign immunity contains

"conclusory statements and general propositions of law" contradicted by the contract documents. *See City & Cnty. of Honolulu*, 39 F.4th at 1110. Thus, these immunity defenses are not colorable.

Pfizer has not asserted "a colorable federal defense to the claim or claims." *Suncor Energy*, 25 F.4th at 1251. Failing all three elements, Pfizer's officer removal argument should be denied.

## II.     Federal Jurisdiction Does Not Exist Under the *Grable* Doctrine.

Pfizer next attempts to justify its removal on the basis of the *Grable* doctrine. *See* Doc. 1, ¶¶ 64-82. Under *Grable*, a state-law claim can "arise under" federal law "if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Suncor Energy*, 25 F.4th at 1257 (quotation omitted). To establish federal jurisdiction under *Grable*, the removing party must demonstrate "that the federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 1265 (quotation omitted). "It is not triggered by a mere need to apply federal law in a state-law claim. Nor can it be triggered solely by a federal defense, in keeping with the well-pleaded complaint rule." *Id.* at 1257 (cleaned up). Federal jurisdiction under *Grable* "is exceedingly narrow," *id.* (quotation omitted), and encompasses only a "slim category" of cases, *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006). Pfizer has not satisfied any of *Grable*'s four requirements, and thus it has failed to establish federal jurisdiction.

### A.     Pfizer has failed to demonstrate that any federal issue is "necessarily raised" or "actually disputed" in this litigation.

Pfizer has failed to identify any federal issue that is "necessarily raised" by the Petition or "actually disputed" in this case. "To determine whether an issue is necessarily raised, the Supreme Court has focused on whether the issue is an essential element of a plaintiff's claim." *Suncor Energy*, 25 F.4th at 1266 (cleaned up). The heart of Pfizer's *Grable* argument rests on the

18

contention that the Petition "asserts that FDA allowed Pfizer to obtain authorization and approval for the vaccine without appropriate clinical studies and suggests that the FDA was wrong to authorize the Pfizer vaccine for use in different populations." Doc. 1, ¶ 68. From this interpretation of the Petition, Pfizer concludes that the State's "consumer protection claims thus turn on the federal questions of (1) whether FDA should have authorized or approved Pfizer's COVID-19 vaccine; (2) the robustness of the FDA's review process; (3) whether statements concerning the efficacy of the vaccine were consistent with FDA guidance; and (4) what concerns, if any, FDA expressed regarding Pfizer's clinical trials and subsequent statements regarding the safety and efficacy of the vaccine." Doc. 1, ¶ 69. Pfizer's theory fails for at least three independent reasons.

First, Pfizer's theory does not accurately characterize the allegations and claims contained in the Petition. The Petition makes no claims regarding whether the vaccine met the requirements of the FDA's regulatory regime or whether the FDA erred in approving the vaccine. *See, e.g.*, Pet., ¶¶ 83, 108-24, 185-90, 191-99 (cited by Doc. 1, ¶ 68). Similarly, the Petition contains no allegations about whether Pfizer's deceptive marketing was consistent with FDA guidance, or any concerns expressed by the FDA. *See generally* Pet. Instead, the Petition focuses solely on Pfizer's public marketing of the vaccine and whether Pfizer's representations were false or deceptive, in violation of Kansas law. *Compare Kentucky ex rel. Conway v. Janssen Pharms., Inc.*, 978 F. Supp. 2d 788, 793 (W.D. Ky. 2013) ("[T]he FDA's actions—namely, its decisions to approve the placement of the subject risk information in certain sections of [a drug's] labels—are not being challenged here. Instead, the critical question is whether Defendants' actions relative to [the drug's] labeling were unfair, deceptive, misleading, or false so as to violate Kentucky law."). Thus, Pfizer's theory rests on a fundamental mischaracterization of Kansas' Petition and the claims

asserted in it. A removing defendant cannot "rewrite" the complaint in order to manufacture federal jurisdiction. *Khalek v. S. Denver Rehabilitation, LLC*, 543 F. Supp. 3d 1019, 1028 (D. Colo. 2021). Pfizer's *Grable* theory has no relation to the Petition actually at issue in this case and thus provides no basis for federal jurisdiction. In addition, because the Petition does not actually implicate the federal issues framed by Pfizer, this theory also fails the second *Grable* requirement, that is, that the federal issue be "actually disputed." *Suncor Energy*, 25 F.4th at 1265.

Second, any issues relating to FDA approval of the vaccine are entirely irrelevant to the elements of Kansas' consumer protection claims and thus do not support jurisdiction under *Grable*. As noted above, a federal issue implicates *Grable* only if "the issue is an essential element of a plaintiff's claim." *Suncor Energy*, 25 F.4th at 1266 (cleaned up). Ordinarily, "[a] removing defendant should be able to point to the specific elements of the plaintiff's state law claims that require proof under federal law." *Minnesota by Ellison*, 63 F.4th at 711 (cleaned up). Here, Pfizer is tellingly silent on which essential element of Kansas' claims turn on FDA approval or guidance. In fact, these issues are entirely irrelevant to whether Kansas has satisfied the essential elements of its KCPA claims. Kansas need only establish that Pfizer engaged in "any deceptive act or practice" in its marketing of the vaccine. K.S.A. § 50-626(a). Kansas has no obligation to show that the FDA erroneously approved a drug, that the marketing of the drug was inconsistent with FDA guidance, or that the FDA expressed any concerns about the drug. *See id.* A pharmaceutical company can be liable under the KCPA for its marketing of an FDA-approved drug. Indeed, Pfizer has repeatedly entered into consent judgments in cases brought by Kansas involving the marketing of FDA-approved drugs. *See, e.g.*, Exhibits A, D, and E to Petition. Whether the FDA properly approved Pfizer's vaccine is entirely irrelevant to whether Kansas can prevail on its claims against Pfizer. As a result, any questions about the propriety of the FDA's approval or any guidance given

by the FDA could not constitute "an essential element of [Kansas'] claim." *Suncor Energy*, 25 F.4th at 1266 (cleaned up); *see also Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1211 (10th Cir. 2012) (holding that *Grable* did not apply where purported federal issues "need not necessarily be addressed in resolving [the] state-law claims").

Third, even if the elements of Kansas' KCPA claims implicated FDA approval—they do not—*Grable* still would not apply, because Kansas could prevail on alternative theories that do not implicate federal issues. There can be no serious dispute that, whatever else the Petition might (in Pfizer's view) allege, it plainly alleges that Pfizer made false representations of material facts regarding the vaccine to the public generally and to Kansas consumers. *See, e.g.*, Pet., ¶¶ 1-4, 28-29, 53-56, 92-99, 206-222, 224-241, 245-256, 324, 328. If those allegations are true, they would give rise to liability under the KCPA, regardless of any purported allegations regarding FDA approval. *See* K.S.A. §§ 50-626; 50-636. "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). "[A] claim supported by alternative theories in the complaint may not form the basis for federal jurisdiction unless federal law is essential to each of those theories." *Cherokee Nation v. Morris & Dickson Co.*, No. 23-cv-237, 2024 WL 1539468, at *2 (E.D. Okla. Mar. 19, 2024) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988) (brackets omitted)). Where a plaintiff can establish liability under an alternative theory that does not implicate federal issues, *Grable* does not apply. *See, e.g.*, *New Mexico ex rel. Balderas v. Purdue Pharma L.P.*, 323 F. Supp. 3d 1242, 1252 (D.N.M. 2018); *New Mexico ex rel. Balderas v. Preferred Care, Inc.*, 158 F. Supp. 3d 1226, 1231 (D.N.M. 2015); *Georgia ex rel. Carr v. Elite Integrated Medical, LLC*, 533 F. Supp. 3d 1303, 1314-15 (N.D. Ga. 2021). *Grable* provides no basis for federal jurisdiction here.

As a fallback theory, Pfizer claims that the Petition necessarily raises a federal issue by alleging that Pfizer has violated several state-court consent judgments involving the deceptive marketing of other products. *See* Doc. 1, ¶¶ 71-76. In particular, Pfizer asserts that all of the relevant consent judgments include language to the effect that (a) Pfizer would not violate the judgment by failing to take action prohibited by the FDCA or the FDA; (b) Pfizer would not violate the judgment by taking action required by the FDCA or the FDA; and (c) Pfizer would not violate the judgment by promoting its products using "language required or agreed to by" the FDA. *See id.* ¶¶ 73-74. Citing these provisions, Pfizer claims that "it is impossible to assess compliance with the consent judgments without also assessing Pfizer's compliance with the FDCA and FDA guidance." *Id.* ¶ 76. This alternative theory also fails for several fundamental reasons.

First, Pfizer does not claim that its fraudulent marketing of the vaccine, as described in the Petition, implicates any of these issues. Pfizer does not claim that federal law mandated deceptive marketing of the vaccine. *See generally* Doc. 1. Pfizer does not claim that federal law prohibited it from accurately and transparently marketing the vaccine. *Id.* And Pfizer does not claim that its deceptive public claims about the vaccine were "required or agreed to by" the FDA. *Id.* Nor would any of those claims be plausible if Pfizer had made them. At best, then, it is entirely hypothetical whether this litigation would ever implicate the purported federal issues framed by Pfizer. A hypothetical federal issue is not "necessarily raised" under *Grable*. *See, e.g.*, *Flandro v. Chevron Pipe Line Co.*, No. 2:18-cv-697, 2019 WL 1574811, at *3 (D. Utah April 11, 2019); *Mayor & City Council of Baltimore v. BP PLC*, 388 F. Supp. 3d 538, 560 (D. Md. 2019). *Grable* does not apply where "there is only a possibility that a federal issue might arise." *Devon Energy*, 693 F.3d at 1211. Moreover, because Pfizer does not actually claim that its asserted federal issues

apply to any of the misrepresentations at issue in this case, this theory also fails the second *Grable* requirement, that is, that the federal issue be "actually disputed." *Suncor Energy*, 25 F.4th at 1265.

Second, there are many alleged misrepresentations described in the Petition that could not possibly implicate the issues raised by Pfizer. For example, the Petition alleges that Pfizer's CEO made false and deceptive representations to the public during TV interviews. *See, e.g.*, Pet., ¶¶ 94, 96. The Petition also alleges that Pfizer made false and deceptive representations to the public in its press releases. *Id.*, ¶¶ 95, 98, 99. There is no plausible claim that federal law or the FDA dictated the contents of those public statements. Thus, to the extent that any of the relevant misrepresentations implicate the purported federal issues framed by Pfizer, Kansas plainly could prevail on "alternative theories," such as those that rely on misrepresentations in TV interviews and press releases. As noted above, where a plaintiff can establish liability under an alternative theory that does not implicate federal issues, *Grable* does not apply. *Purdue Pharma*, 323 F. Supp. 3d at 1252; *Preferred Care*, 158 F. Supp. 3d at 1231. Thus, Kansas' claims do not "necessarily raise" any federal issues, and *Grable* does not apply.

> **B.    Pfizer has failed to demonstrate that any federal issue implicated by this litigation is "substantial" under *Grable*.**

Even if Pfizer had identified federal issues that are necessarily raised and actually disputed, those federal issues would not be "substantial." Pfizer asserts that its purported federal issues are "substantial insofar as they relate to matters of national importance—namely, the safety and efficacy of a novel vaccine that was sold to the federal government as part of Operation Warp Speed, through which the federal government put forward an unprecedented effort to ensure Americans have priority access to free, safe, and effective COVID-19 vaccines." Doc. 1, ¶ 79 (quotation omitted).

Pfizer fundamentally misunderstands the relevant inquiry. "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn v. Minton*, 568 U.S. 251, 260 (2013). In other words, the issue must "have broader ramifications for the legal system." *Xitronix Corp. v. KLA-Tencor Corp.*, 916 F.3d 429, 441 (5th Cir. 2019). Pfizer's theory does not implicate any consequences *for the legal system* at all. Instead, Pfizer relies on the more nebulous notion that the safety of its COVID-19 vaccine is "important" to the country. This vaguer sense of "importance," entirely untethered to any impacts on the legal system, does not establish substantiality under *Grable*. *See, e.g.*, *Dominion Pathology Labs., P.C. v. Anthem Health Plans of Va., Inc.*, 111 F. Supp. 3d 731, 738 (E.D. Va. 2015) (rejecting the notion that "the national importance of the [Affordable Care Act]" or "the lofty purpose of the ACA" made a dispute "substantial" within the meaning of *Grable*); *Srebro v. Johnson*, No. 1:19-cv-3226, 2019 WL 5491828, at *3 (N.D. Ga. July 31, 2019) (rejecting *Grable* argument premised on the fact that litigation involved "a matter of 'extreme public interest'").

Applying the correct standard, the purported federal issues identified by Pfizer are not substantial. A federal issue will rarely be substantial where it "is fact-bound and situation-specific" rather than "a nearly pure issue of law" that "would govern numerous [other] cases." *Empire Healthchoice*, 547 U.S. at 700-01 (quotation omitted). Any questions involving Pfizer's interactions with the FDA necessarily will be highly fact-bound and situation-specific, depending entirely on the details of one particular product and one particular company's conduct surrounding that product. Thus, no federal issues potentially implicated by this case are substantial under *Grable*. *See id.*; *Suncor Energy*, 25 F.4th at 1268-69 (finding federal issues not substantial because they were "fact-bound" and "situation-specific"); *Preferred Care*, 158 F. Supp. 3d at 1232 (finding

federal issues not to be substantial because "[a]ny [federal] legal issues resolved in this case are likely to be fact-bound and case-specific"). No federal issue here is substantial.

Moreover, Congress has not created any federal cause of action that Kansas could have pursued based on Pfizer's misconduct. This omission reflects a congressional judgment that a dispute of this kind does not implicate substantial federal interests. *See Purdue Pharma*, 323 F. Supp. 3d at 1252-53; *see also Oregon ex rel. Kroger v. Johnson & Johnson*, 832 F. Supp. 2d 1250, 1257 (D. Or. 2011). "Congress did not intend FDA oversight to be the exclusive means of ensuring drug safety and effectiveness." *Wyeth v. Levine*, 555 U.S. 555, 575 (2009). State consumer-protection laws play an important, complementary role to FDA regulation. *See id.* at 579 (noting that state-law actions involving drugs can aid the FDA by "uncover[ing] unknown drug hazards and provid[ing] incentives for drug manufacturers to disclose safety risks promptly"). A state Attorney General's enforcement of these state laws in state courts does not implicate any substantial federal interest. *See State Ethics Comm'n v. TNMP, Inc.*, 24-cv-652, 2024 WL 3925412, at *4 (D.N.M. Aug. 23, 2024) ("The issues here are not substantial—given a state entity sued Defendants in state court for alleged violations of state law."); *see also In re Vioxx Prods. Liab. Litig.*, 843 F. Supp. 2d 654, 669 (E.D. La. 2012). Because no federal issue in this case is substantial, *Grable* does not apply. *Suncor Energy*, 25 F.4th at 1265.

### C.    Exercising federal jurisdiction over this case would disrupt the federal-state balance approved by Congress.

Finally, *Grable* does not apply because exercising federal jurisdiction over this case would disrupt the federal-state balance approved by Congress. *See Suncor Energy*, 25 F.4th at 1265. Several factors dictate this conclusion. First, Congress has not created a private right of action for the violation of any federal law purportedly implicated by this case. "[T]he absence of a federal private right of action" provides evidence that Congress did not intend for federal courts to resolve

disputes of this kind. *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 318 (2005). It is unsurprising, then, that numerous courts have found "that it would upset the balance of judicial responsibilities to allow state law claims that touch on the FDCA to proceed in federal court." *Georgia ex rel. Carr*, 533 F. Supp. 3d at 1317.

Second, Pfizer's theories, if correct, would necessitate federal jurisdiction over almost every state-law claim involving the marketing of an FDA-approved drug, at least where that marketing touches on safety or efficacy. This novel jurisdictional theory "would result in a 'horde of original filings and removal cases raising other state claims with embedded federal issues,' which weighs heavily in [favor] of remanding this case to state court." *Purdue Pharma*, 323 F. Supp. 3d at 1253 (quoting *Grable*, 545 U.S. at 318) (internal citation omitted).

Third, "this case is an enforcement suit by a state attorney general, such that principles of comity militate against permitting removal of this case to a federal forum." *Preferred Care*, 158 F. Supp. 3d at 1232. A tenuous assertion of federal jurisdiction over a state-law enforcement action brought by a state law enforcement officer would unnecessarily impinge on Kansas' core sovereign interests.

Fourth, in the context of the claims asserted in the Petition, "[a] federal court offers no greater experience, solicitude, or hope of uniformity in applying federal law to a unique set of facts than would a state court." *Gonzales v. Ever-Ready Oil, Inc.*, 636 F. Supp. 2d 1187, 1194 (D.N.M. 2008). There is simply no reason for a federal court to resolve the state-law claims at issue here. Thus, *Grable* does not apply, and the Court should remand this litigation to state court.

## III.   Federal Jurisdiction Does Not Exist From Complete Preemption.

"Complete preemption is a rare doctrine." *Suncor Energy*, 25 F.4th at 1257. The doctrine is "so rare in fact that the Supreme Court has recognized complete preemption in only three areas:

§ 301 of the Labor Management Relations Act of 1947 ('LMRA'), § 502 of the Employee Retirement Income Security Act of 1974 ('ERISA'), and actions for usury against national banks under the National Bank Act." *Devon Energy*, 693 F.3d at 1204-05.

"Federal courts have been nearly unanimous in concluding that the PREP Act does not meet this high bar [for complete preemption]." *Pratt v. JACC Healthcare Ctr. of Norwich LLC*, No. 3:22-CV-566, 2022 WL 16855976, at *5 (D. Conn. Nov. 10, 2022). In a survey by a court in this Circuit, the "overwhelming majority" of more than 60 district court decisions "found no complete preemption by the PREP Act." *Khalek*, 543 F. Supp. 3d at 1026; *see also Pratt*, 2022 WL 16855976, at *5 (finding "four circuit courts" and "dozens of district courts…have concluded that the PREP Act is not a complete preemption statute."). To evade this overwhelming authority denying complete preemption, Pfizer presents four arguments that already have been rejected by numerous courts. They fail here for the same reasons.[12]

First, Pfizer relies (Doc. 1, ¶ 88) on 42 U.S.C. § 247d-6d(b)(8) in the PREP Act. This statute is "a textbook example of ordinary defensive preemption." *Dorsett v. Highlands Lake Ctr., LLC*, 557 F. Supp. 3d 1218, 1230 (M.D. Fla. 2021). "Ordinary preemption 'does not render a state-law claim removable to federal court.'" *Devon Energy*, 693 F.3d at 1204 n.4 (10th Cir. 2012) (quotation omitted). Thus, § 247d-6d(b)(8) "does not confer Article III court jurisdiction over plaintiff's claims." *Khalek*, 543 F. Supp. 3d at 1026. Pfizer's reliance on § 247d-6d(b)(8) fails to establish complete preemption.

Second, Pfizer relies on immunity language in the PREP Act. *See* Doc. 1, ¶ 89 (quoting 42 U.S.C. § 247d-6d(a)(1)). "This immunity, however, does not create a cause of action against a

---

[12] Kansas also disputes Pfizer's arguments on the merits, but those disputes do not need to be resolved to conclude that Pfizer has failed to establish federal jurisdiction.

covered person, let alone an exclusive one. The statute affords a federal defense to liability under state law—a rule of ordinary preemption." *Cagle v. NHC Healthcare-Maryland Heights, LLC*, 78 F.4th 1061, 1067 (8th Cir. 2023) (citing decision by six circuits). In short, § 247d-6d(a)(1) "does not create a federal cause of action that completely preempts covered state-law claims." *Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 853 (6th Cir. 2023); *see also Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213 (7th Cir. 2022). Pfizer's reliance on § 247d-6d(a)(1) fails to establish complete preemption.

Third, Pfizer relies (Doc. 1, ¶ 91) on an advisory opinion by the then-general counsel of the United States Department of Health and Senior Services. But the PREP Act "does not grant the Secretary authority to opine on the scope of federal jurisdiction." *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 403 (3d Cir. 2021). Accordingly, every circuit to consider this advisory opinion has concluded that it "is not entitled to controlling deference." *Cagle*, 78 F.4th at 1067. Moreover, "the Advisory Opinion 'cites no cases' supporting its conclusion" and thus "lack[s] the 'power to persuade.'" *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 586 n.3 (5th Cir. 2022) (quotations omitted); *see also Martin*, 37 F.4th at 1214 ("The reasoning is thin."). Pfizer's reliance on the advisory opinion fails to establish complete preemption.

Finally, Pfizer relies on "[t]he sole exception" to the PREP Act's immunity provision, which creates "'an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct.'" Doc. 1, ¶ 90 (quoting 42 U.S.C. § 247d-6d(d)(1)). "To establish complete preemption here, [Pfizer] must show that [Kansas] alleged (1) willful misconduct in (2) the use of a covered countermeasure which (3) *caused* death or *physical* injury." *Lopez v. Cantex Health Care Centers II, LLC*, No. 1:23-CV-1003, 2023 WL 9425460, at *6 (D.N.M. Dec. 28, 2023) (emphasis original). Kansas has not alleged any injuries

from "death or physical injury," *see* Pet., which alone renders this "sole exception" inapplicable. Like a case in this Circuit involving consumer protection allegations, Kansas' Petition "tracks the statutory language" for the KCPA and "merely attack[s] [Pfizer's] advertising or statements" regarding its COVID-19 vaccine. *Lopez*, 2023 WL 9425460, at *6; *see also Mason v. Loris Rehab & Nursing Ctr., LLC*, No. 4:21-CV-01485, 2021 WL 7541157, at *5 (D.S.C. Dec. 16, 2021) (granting remand because none of the plaintiff's claims, including a consumer protection claim under South Carolina law, "would qualify as willful misconduct"). Kansas' Petition thus "does not satisfy the three elements of the 'willful misconduct' statute." *Lopez*, 2023 WL 9425460, at *6.

For complete preemption to apply, "the federal remedy at issue must vindicate the same basic right or interest that would otherwise be vindicated under state law." *Devon Energy*, 693 F.3d at 1207. Applying this principle, a court in this Circuit "[could not] conclude that the willful misconduct claim would provide a remedy that vindicates the same basic right under state law here," which included a state law consumer protection claim. *Lopez*, 2023 WL 9425460, at *5. Pfizer does not allege that Kansas could have brought its consent judgment and consumer protection claims under § 247d-6d(d)(1), nor could it. Because Kansas' claims "could not have been brought under the PREP Act's cause of action for willful misconduct," complete preemption does not apply even though the Petition may include the word "willful." *Est. of Barrera v. Walgreen Co.*, No. 1:23-CV-24281, 2024 WL 3072043, at *4 (S.D. Fla. May 31, 2024) (recommending remand even though the complaint described a defendant's behavior as "willful" eight times), *report and recommendation adopted,* No. 23-CV-24281, 2024 WL 3070169 (S.D. Fla. June 20, 2024).

Pfizer has failed to establish complete preemption.[13]  The Court should remand.

## IV.    The Court Should Award Attorney's Fees.

Kansas respectfully requests that the Court award attorney's fees under 28 U.S.C. § 1447(c) because Pfizer lacked an objectively reasonable basis for removal.  *See Cutter Sw. Aircraft Sales, LLC v. Kansas City Aviation Ctr., Inc.*, No. 23-2106-DDC-KGG, 2023 WL 3376602, at *1 (D. Kan. May 11, 2023); *see also Thomas v. Cantex Health Care Centers III LLC*, No. 3:21-CV-01412, 2021 WL 5163199, at *5 (N.D. Tex. Nov. 4, 2021) (granting attorney's fees after rejecting removal arguments based on complete preemption, federal officer removal, and the *Grable* doctrine).  In addition, fees should be awarded because Pfizer's "strained theory" of federal officer removal jurisdiction is "manifestly weak."  *Fisher*, 2022 WL 16949603, at *13.  Consistent with *Cutter Southwest Aircraft Sales*, 2023 WL 3376602, at *2, Kansas reserves the right to prove the amount of attorney's fees and comply with D. Kan. Rule 54.2 after the Court orders fees.

## <u>CONCLUSION</u>

Pfizer has failed to meet its burden to establish federal jurisdiction under federal officer removal, the *Grable* doctrine, or complete preemption.  Every jurisdictional assertion is fatally flawed.  Kansas respectfully requests that the Court remand this case to state court and award attorney's fees.

---

[13] Pfizer's "expansive reading of the PREP Act's jurisdictional scope" also raises separation of power concerns because it "suggests that Congress has vested the Secretary of the HHS, an executive branch official, with the authority to effectively strip jurisdiction from all state courts over state-law tort claims concerning COVID-19 with the stroke of a pen."  *Fisher v. Rome Ctr. LLC*, No. 6:22-CV-0685, 2022 WL 16949603, at *8 (N.D.N.Y. Nov. 15, 2022).

Dated: September 20, 2024         Respectfully submitted,

**KRIS W. KOBACH**
**ATTORNEY GENERAL**

*/s/ Kaley Schrader*
Frances R. Oleen, #17433
Deputy Attorney General
Kaley Schrader, #27700
Assistant Attorney General
Office of the Attorney General
Public Protection Division
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612-1597
Tel:  785-296-3751
Fax: 785-291-3699
kaley.schrader@ag.ks.gov

JAMES OTIS LAW GROUP, LLC

*/s/ Justin D. Smith*
Justin D. Smith, Mo. Bar No. 63253
William O. Scharf, Mo. Bar No. 66676*
Michael C. Martinich-Sauter, Mo. Bar. No. 66065*
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
(816) 678-2103
Justin.Smith@james-otis.com

* *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 20, 2024, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ Justin D. Smith*

31