UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **STATE OF KANSAS**, *ex rel.* </br> **KRIS W. KOBACH**, Attorney General, </br> </br> Plaintiff, </br> </br> v. </br> </br> **PFIZER INC.**, </br> </br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> ) Case No. 6:24-cv-01128-DDC-BGS </br> ) </br> ) </br> ) </br> ) |

<u>**REPLY IN SUPPORT OF**</u>
<u>**MOTION TO REMAND AND FOR AWARD OF ATTORNEY'S FEES**</u>

Pfizer has failed to meet its burden to establish federal jurisdiction. Pfizer repeatedly does not respond to arguments, contest contract provisions, or distinguish cases. These undisputed points undermine Pfizer's removal arguments and demonstrate that Pfizer lacked an objectively reasonable basis for removal. The Court should remand this case and award attorney's fees.

**I.    Pfizer Failed to Establish Jurisdiction Under the Federal Officer Removal Statute.**

**A.    Pfizer failed to prove it was "acting under" the direction of a federal officer.**

In its opposition, Pfizer does not respond to any of the specific contractual provisions that defeat its removal arguments. *See* Doc. 19, at 4-14. For example, Pfizer does not dispute that it developed the vaccine without any government specifications or funding. Doc. 19, at 6 (citing Doc. 1-2, § 1.1.2). In the *Jackson* litigation, Pfizer argued that no government funding meant activities were "out-of-scope."[1] Doc. 19-1, at 13 (PDF p. 18). In addition, Pfizer enjoyed a broad

---

[1] Despite Pfizer's attempt to downplay its prior inconsistent litigation statements, Doc. 25, at 13, Pfizer argued then that its contract "does not impose any requirements relating to Pfizer's clinical development activities." Doc. 19-1, at 22 n.24. Moreover, prohibiting the government from withholding payment for delivered doses unless "FDA actually withdrew authorization or approval of Pfizer's vaccine," *id.* at 14, shows that the government did not exercise "subjection, guidance,

1

liability waiver for any missed deadlines, Doc. 19, at 5 (citing Doc. 1-2, § 11.6), which already were based on "Pfizer's best estimate" of the timeline," *id.* (citing Doc. 1-2, § 4.0). These undisputed provisions demonstrate that Pfizer was not under the government's "subjection, guidance, or control." *Suncor Energy*, 25 F.4th at 1251. Pfizer never points to evidence that it was under the government's "subjection, guidance, or control," and instead carefully argues that its contract simply "facilitate[d] federal monitoring of Pfizer's activities." Doc. 25, at 10.

Pfizer's arguments are even undermined by the few contractual provisions that it cites. For example, Pfizer points to the "updates and reports" it submitted to the government. *Id.* But according to the contract, Pfizer controlled the due date and format for reports that in almost all cases did not require government approval. Doc. 1-2, at 12-14 (PDF pp. 15-17). In addition, the only unredacted language for two plans indicates that the parties designed them to comply with existing regulatory requirements.[2] Doc. 1-2, at p. 14 (PDF p. 17). "[S]imply *complying* with the law" is not enough "to bring a private person within the scope of" federal officer removal. *Suncor Energy*, 25 F.4th at 1251 (emphasis original).

---

or control" over Pfizer, *see Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1251 (10th Cir. 2022).

[2] Contrary to Pfizer's assertion that "[t]he material provisions in the Base Agreement and SOW are unredacted," Doc. 25, at 9 n.9, all but one of the specific contract examples cited by Pfizer is clouded by redactions. *See id.* at 10 (bullets one, three, four, and five). For example, Pfizer provides no evidence that the Quality Management Plan required more than existing regulatory obligations because only 10 words are unredacted. Doc. 1-2, at 14 (PDF p. 17). Again, redactions should be "resolved against jurisdiction." Doc. 19, at 6 n.3.

While Pfizer now offers to submit unredacted contract documents under seal, Doc. 25, at 9 n.9, Pfizer has "provided no evidence that information constitutes a trade secret and [has] not established that disclosure of the information may be harmful," *Gipson v. Sw. Bell Tel. Co.*, No. 2:08-cv-02017-KHV, 2008 WL 4712828, at *1 (D. Kan. Oct. 23, 2008); *see also Freebird, Inc. v. Merit Energy Co.*, 597 F. Supp. 2d 1245, 1247 (D. Kan. 2009) ("The removing party must meet its burden of establishing federal jurisdiction 'in the notice of removal itself, not a later document.'"). It is unclear how, for example, estimated due dates that have passed, Doc. 1-2, at 12 (PDF p. 15), are trade secrets that "outweigh[] the presumption of public access," *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1242 (10th Cir. 2012). Pfizer's sealing request thus lacks necessary evidentiary support.

When challenged by removal factors the Tenth Circuit considered, Doc. 19, at 4-14 (citing *Suncor Energy*, 25 F.4th at 1251-54),[3] Pfizer summarily asserts, in a single unsupported sentence, that it "easily satisfies" each factor. Doc. 25, at 12. "Removal cannot be based simply upon conclusory allegations." *Honeycutt v. Dillard's Inc.*, 989 F. Supp. 1375, 1377 (D. Kan. 1997). Pfizer's conclusory statements do not satisfy its "burden of establishing jurisdiction." *Suncor Energy*, 25 F.4th at 1250.

Pfizer also does not even attempt to distinguish the circuit court decisions cited by Kansas that found open market, arm's length business sales like Pfizer's did not satisfy federal officer removal. Doc. 19, at 10-11. Despite casting its vaccine as "[w]artime production" to meet a "pressing federal need," Doc. 25, at 8-9, Pfizer does not dispute that most of its vaccine sales went to buyers other than the federal government. Doc. 19, at 10. For that matter, Pfizer's first announced sale was to the United Kingdom, not the United States. *See Pfizer and BioNTech Announce Agreement with the United Kingdom for 30 Million Doses of mRNA-based Vaccine Candidate against SARS-CoV-2*, July 20, 2020.[4] And Pfizer provides no evidence that its contracts required it "to tailor [vaccine] production to detailed government specifications" under the government's "strict guidance or control." *Suncor Energy*, 25 F.4th at 1253.

The lack of government specifications and control also distinguishes the unpublished Sixth Circuit decision that Pfizer repeatedly cites. First, Pfizer has no response to contemporaneous statements by its own officials, including its CEO, that it did not join Operation Warp Speed. Doc. 19, at 8-9; Pet. ¶¶ 33-38. Second, unlike Pfizer, "Moderna 'co-developed' its COVID-19 vaccine

---

[3] Pfizer (at 12) repeatedly accuses Kansas of "inventing" and "fabricating" a test, despite Kansas never arguing a "test" existed and the word "test" not appearing in Kansas' motion. *See* Doc. 19.
[4] *Available at* https://www.pfizer.com/news/press-release/press-release-detail/pfizer-and-biontech-announce-agreement-united-kingdom-30.

3

with the federal government" and "worked under the 'direction and control' of the federal government," such as when "one agency set the clinical trial protocols" and "another agency led the trials." *Goins v. Saint Elizabeth Med. Ctr., Inc.*, No. 22-6070, 2024 WL 229568, at *3 (6th Cir. Jan. 22, 2024). Pfizer, on the other hand, reported that its contract "states explicitly that Pfizer's 'clinical trials' are 'out-of-scope.'" Doc. 19-1, at 8. Third and finally, the Sixth Circuit had no briefing on the issue, as no party contested subject matter jurisdiction on appeal and the plaintiff did not oppose Moderna's motion to dismiss at the district court. *Id.* at *2 n.3, *3.

Pfizer's last argument is its heavy reliance on a "priority rating" under the Defense Production Act. Doc. 25, at 5, 9 n.10, 11, 15. It is now clear why Pfizer did not attach these documents to its notice of removal. *See* Doc. 19, at 4 n.1. The Defense Production Act documents allow Pfizer to impose delivery deadlines on its raw material suppliers, but they set no new timelines or obligations on Pfizer. *See* Docs. 25-1, 25-2, 25-3. While Pfizer's suppliers may have faced penalties for late delivery, *see* 45 C.F.R. §§ 101.34(b), 101.70(b), (c), the government does not appear to have required anything more than "lawful obedience" from Pfizer, which "is not enough" for removal. *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1108 (9th Cir. 2022).

> **B. Pfizer failed to prove a connection or association between Kansas' claims and government-directed conduct.**

Pfizer does not dispute that its contract explicitly exempted Pfizer's public statements about its COVID-19 vaccine from government oversight. Doc. 19, at 9, 15-16 (citing Doc. 1-2, § 11.11). Pfizer does not contest this provision's relevance to Kansas' claims, nor does Pfizer argue that the government ordered any of the statements at issue in Kansas' complaint.[5]

---

[5] This distinguishes Pfizer's citation, Doc. 25, at 8, to warship building cases. *See, e.g.*, *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 253 (4th Cir. 2017) ("the Navy had precise specifications . . . that governed the content of any communication . . ."); *see also Anne Arundel Cnty., Maryland v. BP P.L.C.*, 94 F.4th 343, 349 (4th Cir. 2024) (distinguishing *Sawyer* on grounds relevant here).

4

The circuit court cases dismissed by Pfizer, Doc. 25, at 16 n.13, granted remand in government consumer protection lawsuits when confronted with supply contracts that did not require the company to make the misrepresentations at issue. *See Anne Arundel Cnty.*, 94 F.4th at 349; *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 145 (2d Cir. 2023); *Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 715 (8th Cir. 2023); *Rhode Island v. Shell Oil Prod. Co.*, 35 F.4th 44, 53 n.6 (1st Cir. 2022).[6]  Pfizer never identifies any contract provision that forced it to make the statements at the center of Kansas' lawsuit.  This alone defeats removal.

Unable to identify any relevant contractual requirements, Pfizer deploys the red herring of Kansas' civil conspiracy allegations.  Doc. 25, at 15-16.  Kansas alleges that Pfizer individually, as well as with private and government parties, strived "to conceal and suppress material facts about Pfizer's COVID-19 vaccine," such as through social media censorship.  Pet. ¶ 271; *see also id.* at ¶¶ 261-283.  Neither Kansas nor Pfizer alleges this conspiracy was part of Pfizer's government contract or that, through this conspiracy, the government required Pfizer to make any of the statements at issue here.  In addition to lacking connection to Kansas' misrepresentation claims, Pfizer presents no evidence that it was "acting under" government control during this conspiracy, nor does it have colorable federal defenses to speech censorship activities.

### C.     Pfizer failed to prove a colorable federal defense to Kansas' claims.

Pfizer has abandoned five of the seven defenses it claimed were colorable by not defending them.  Doc. 25, at 17-20.  Its arguments fail as to the remaining two defenses as well.

---

[6] Although Pfizer accuses Kansas of citing an "overturned case," Doc. 25, at 16, according to the footnote Kansas cited in the immediately preceding sentence, Doc. 19, at 14, the First Circuit decided to "adhere to" its earlier decision on federal officer removal because "nothing in the Supreme Court's *BP p.l.c.* opinion undermines that holding." *Rhode Island*, 35 F.4th at 53 n.6.

Pfizer does not deny that it must "raise a defense arising out of [its] official duties." *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981). Yet Pfizer's PREP Act and Defense Production Act defenses "do[] not arise from official duties, as [Pfizer] do[es] not contend that the government ordered [its] allegedly deceptive acts." *City & Cnty. of Honolulu*, 39 F.4th at 1110. Pfizer cites no authority that holds otherwise. Doc. 25, at 20. Pfizer has failed to show that any defense arises out of its official duties, and thus it fails to show a colorable federal defense.

Pfizer also does not address the Defense Production Act cases cited by Kansas that granted remand when the removing party failed to show that it was "being forced to produce anything it was not already producing," or that its exposure to liability came from compliance with any rule, regulation, or order issued pursuant to the Act. Doc. 19, at 17. Pfizer never asserts the former and only weakly attempts to claim that this lawsuit satisfies the latter. Doc. 25, at 19. However, compliance with the Defense Production Act did not cause Pfizer to make any of the statements at issue. *See* Docs. 25-1, 25-2, 25-3. Pfizer has the "burden to show [it has] a *colorable* federal defense," and it must at least "show that [it is] entitled to raise it." *Anderson v. Hackett*, 646 F. Supp. 2d 1041, 1053 (S.D. Ill. 2009). Pfizer has not done so.

Finally, Pfizer's PREP Act arguments hinge on false portrayals of Kansas' allegations. Kansas has made no claims relating to the "administration or use of Pfizer's vaccine." Doc. 25, at 18. Instead, Kansas' claims relate to Pfizer's misleading public statements. *See* Pet.

**II.     Pfizer Failed to Establish Jurisdiction Under the *Grable* Doctrine.**

Pfizer's arguments regarding the *Grable* doctrine lack merit. Among other things, Pfizer has failed to identify any federal issue necessarily raised by Kansas' claims. This element of *Grable* asks whether a federal "issue is an essential element of a plaintiff's claim." *Suncor*, 25 F.4th at 1266 (cleaned up). "A removing defendant should be able to point to the *specific elements*

6

*of the plaintiff's state law claims* that require proof under federal law." *Minnesota by Ellison*, 63 F.4th at 712 (emphasis added).  Pfizer fails to point to *any element* of *any claim* asserted by Kansas that necessarily turns on federal law.  Rather than discuss specific elements of actual claims, Pfizer vaguely points to the fact that its vaccine was produced against a backdrop of FDA regulation.  But *Grable* requires much more than a whiff of federal interests in the air.

Pfizer notes that the consent judgments that it breached include references to the FDA and the FDCA.  Doc. 25, at 22-23.  In Pfizer's view, "[t]he consent judgments, on their face, raise a federal issue—whether Pfizer's public statements were in compliance with the FDCA and FDA guidance."  *Id.* at 22.  But *Grable* does not ask whether "the consent judgments" raise a federal issue (which they do not).  Instead, it turns on whether the "essential element[s]" of Kansas' claims do.  *Suncor*, 25 F.4th at 1266.  And Pfizer makes no effort at all to show that the essential elements of any claim necessarily raises a federal issue.  In addition, it is entirely irrelevant whether Pfizer's marketing was "in compliance with the FDCA and FDA guidance."  Pfizer can violate the KCPA without violating the FDCA or FDA guidance.  Because Kansas can establish violations of state law without reference to federal law, its claims do not "necessarily raise" any federal issue.  *Devon Energy Production Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1211 (10th Cir. 2012) (holding that *Grable* did not apply where purported federal issues "need not necessarily be addressed in resolving [the] state-law claims").  Moreover, the consent judgments implicate federal law only where federal law mandated the conduct that would otherwise violate the judgment.  *See, e.g.*, Pet., Ex. A, ¶ 6.  Pfizer has not shown that federal law required it to use deceptive and fraudulent marketing practices in promoting its vaccine.  Thus, this litigation does not even implicate the portions of the consent judgments that make passing reference to federal law.

Pfizer's cursory contentions regarding Count X similarly lack merit. Pfizer again fails to identify any essential element of any claim that necessarily implicates federal issues. In addition, the mere fact that federal actors' conduct might be relevant to a plaintiff's claims does not suffice. For example, in *Empire Healthchoice Assurance, Inc. v. McVeigh*, the Supreme Court rejected *Grable* jurisdiction over a dispute involving a contract negotiated by a federal agency, to which the agency was a party, that implemented a federal statutory directive, and that impacted the employee benefits of millions of federal employees. *See generally* 547 U.S. 677 (2006).

Pfizer also has failed to show that any federal issue implicated here is "substantial." Pfizer repeatedly mischaracterizes Kansas' claims as "challeng[ing] the federal government's policy response to a national emergency." Doc. 25, at 24. Kansas' lawsuit turns on Pfizer's misconduct, not whether the federal government appropriately handled the pandemic. In any event, substantiality must be tethered to "ramifications for the legal system," not vaguely defined policy impacts. *Xitronix Corp. v. KLA-Tencor Corp.*, 916 F.3d 429, 441 (5th Cir. 2019). "The mere involvement of a federal program or an interest which Congress has deemed important is insufficient to create a substantial federal issue." *Cutilo v. Wellmore Behavioral Health*, No. 3:15-cv-1174, 2016 WL 3976543, at *5 (D. Conn. July 22, 2016). Moreover, the purported federal issues invoked by Pfizer—such as whether its fraudulent marketing complied with FDA guidance—fundamentally presents a question of fact, which are not "substantial" under *Grable*. *See, e.g.*, *McAdams v. Medtronic, Inc.*, Civ. No. H-10-831, 2010 WL 3909958, at *4 (S.D. Tex. Sept. 29, 2010) ("Whether Medtronic complied with federal standards with respect to its intrathecal pump is important to Medtronic (and to plaintiffs), but there is no broader issue of federal law implicated."). Pfizer also derides Kansas' observation that no federal statute creates an alternate cause of action that Kansas could have pursued. Doc. 25, at 24-25. Pfizer ignores that

8

the Supreme Court has found this factor to cut against *Grable* jurisdiction. *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 318 (2005); *see also New Mexico ex rel. Balderas v. Purdue Pharma L.P.*, 323 F. Supp. 3d 1242, 1252-53 (D.N.M. 2018). And Pfizer proclaims that its purported federal defenses provide evidence that this case presents substantial federal issues. Doc. 25, at 25. However, federal defenses do not establish jurisdiction under *Grable*. *Suncor*, 25 F.4th at 1267. And Kansas "courts have inherent authority, and are thus presumptively competent to address federal issues, including federal defenses." *Id.* (cleaned up).

### III.    Pfizer Failed to Establish Jurisdiction From Complete Preemption.

Most of Pfizer's complete preemption argument is copied virtually verbatim from its Notice of Removal. *Compare* Doc. 1, ¶¶ 83-94 *with* Doc. 25, at 25-27. Pfizer's limited new material fails to rebut Kansas' arguments.

Not surprisingly since federal courts have been "nearly unanimous" in rejecting this argument, Doc. 19, at 27, Pfizer fails to cite a single case finding federal jurisdiction because the PREP Act completely preempted a plaintiff's claims. Doc. 25, at 27-28.[7] Pfizer does not respond to any of the authority finding that the PREP Act provisions on which it relies are ordinary preemption statutes, which do not create removal jurisdiction. Doc. 19, at 27-28. Pfizer also continues to rely on an agency advisory opinion despite the overwhelming circuit authority finding that it lacks persuasiveness and is not entitled to controlling deference. *Id.* at 28.

In addition to not distinguishing any of the decisions cited by Kansas, Doc. 19, at 28-29, Pfizer ignores the decision it cited that found that "complete preemption does not apply when

---

[7] Pfizer's only citation is to a decision that affirmed remand because there was "no COVID-19 exception to federalism," *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 400 (3d Cir. 2021), but which speculated that "[c]onceivably, some state-law claims could fall within Congress's narrow cause of action for willful misconduct," *id.* at 412.

9

federal law creates an entirely *different* cause of action from the state claims in the complaint." *Maglioli*, 16 F.4th at 411 (emphasis original).  In that case, even using "standard language for a punitive-damages request," like Kansas' standard language for its consumer protection claims, did not allege the "independent cause of action" of "willful misconduct." *Id.*  Pfizer also cannot point to any claim by Kansas for "death or physical injury."  Doc. 25, at 28.  Contrary to Pfizer's unsupported assertions, Kansas could not have brought any of its claims under the PREP Act's exclusive federal cause of action.  *See Maglioli*, 16 F.4th at 411.

IV.     **Pfizer's Failed Removal Should Result in Attorney's Fees.**

Pfizer resists attorney's fees based on "significant statutory and precedential support for Pfizer's removal arguments."  Doc. 25, at 29.  But as just demonstrated, Pfizer lacks such support and an objectively reasonable basis for removal.  For example, Pfizer cannot show that the government directed the statements at issue, it cannot identify any federal issue necessarily raised by Kansas' claims, and it does not cite a single case finding complete preemption under its theory.[8]  And contrary to Pfizer's mistaken local rule argument, "this court often has granted a plaintiff's request for attorney's fees under § 1447(c) and *then* ordered the parties to comply with D. Kan. Rule 54.2."  *Cutter Sw. Aircraft Sales, LLC v. Kansas City Aviation Ctr., Inc.*, No. 23-2106-DDC-KGG, 2023 WL 3376602, at *2 (D. Kan. May 11, 2023) (citing cases) (emphasis original).

## CONCLUSION

Pfizer has failed to meet its burden to establish federal jurisdiction.  Kansas respectfully requests that the Court remand this case to state court and award attorney's fees.

---

[8] Pfizer resorts to relying on a different plaintiff's decision to not move to remand, Doc. 25, at 2, 29, which proves nothing about that party's or the court's views on Pfizer's arguments.  Moreover, any party or the court could raise subject-matter jurisdiction at any time, "even after courts and litigants have expended many resources on the case, potentially wasting these resources and prejudicing litigants." *United States v. Green*, 886 F.3d 1300, 1304 (10th Cir. 2018).

10

Dated: October 28, 2024                Respectfully submitted,

**KRIS W. KOBACH**
**ATTORNEY GENERAL**

<u>/s/ Kaley Schrader</u>
Frances R. Oleen, #17433
Deputy Attorney General
Kaley Schrader, #27700
Assistant Attorney General
Office of the Attorney General
Public Protection Division
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612-1597
Tel:  785-296-3751
Fax: 785-291-3699
kaley.schrader@ag.ks.gov

JAMES OTIS LAW GROUP, LLC

<u>/s/ Justin D. Smith</u>
Justin D. Smith, #79211
William O. Scharf, Mo. Bar No. 66676*
Michael C. Martinich-Sauter, #79214
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
(816) 678-2103
Justin.Smith@james-otis.com

*\* pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 28, 2024, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

<u>/s/ Justin D. Smith</u>

11