IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**STATE OF KANSAS,**

                **Plaintiff**,

v.

**PFIZER, INC.,**

                **Defendant**.

Case No. 24-1128-DDC-BGS

## MEMORANDUM AND ORDER

The federal government procured 100 million doses of a COVID-19 vaccine from defendant Pfizer, Inc. Plaintiff State of Kansas has sued defendant in Kansas state court, alleging that defendant violated the Kansas Consumer Protection Act by misrepresenting the vaccine's efficacy and safety. Defendant removed the case to this federal court, invoking a litany of arguments for federal jurisdiction. Before the court is plaintiff's Motion to Remand (Doc. 19). Defendant filed a Response (Doc. 25). Plaintiff replied (Doc. 26). Though the pertinent statute uses broad language, our Circuit's treatment of the issue convinces the court to grant the Motion to Remand.

**I.     Background**

The following facts come from the Petition[1] (Doc. 1-3) and the documents defendant attached to its Notice of Removal (Doc. 1). *See Doe v. Integris Health, Inc.*, 123 F.4th 1189, 1191 n.1 (10th Cir. 2024) ("'When courts review a notice of removal for jurisdiction, they may

---

[1] "In Kansas state courts, the initial pleading is called a petition, not a complaint." *Country Carpet, Inc. v. Kan. Bldg. Trades Open End Health & Welfare Tr. Fund, Trs.*, 750 F. Supp. 3d 1244, 1250 n.1 (D. Kan. 2024).

consider the complaint as well as documents attached to the notice of removal.'" (quoting *Bd. of Cnty. Comm'rs. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1247 n.1 (10th Cir. 2022))).

Defendant, a publicly traded corporation, contracted with the federal government. Doc. 1-3 at 7, 11 (Pet. ¶¶ 14, 42). That contract obligated defendant to produce 100 million doses of an FDA-approved COVID-19 vaccine in exchange for $1.95 billion.² *Id.* In a nutshell, plaintiff's suit alleges that defendant waged a misinformation campaign by promoting "false, misleading, and deceptive" statements about its COVID-19 vaccine and its efficacy. *Id.* at 64–71 (Pet. ¶¶ 323–65). The Petition asserts claims arising under the Kansas Consumer Protection Act (KCPA). *Id.* Four counts assert claims that allege defendant violated consent judgments entered in Kansas courts in 2008, 2012, and 2014. *Id.* at 64–66 (Pet. ¶¶ 323–39). Four counts allege that defendant engaged in deceptive acts or practices. *Id.* at 67–69 (Pet. ¶¶ 340–55). One count alleges unconscionable acts or practices. *Id.* at 69–70 (Pet. ¶¶ 356–59). And one count alleges that defendant conspired with the federal government and private entities to violate the KCPA. *Id.* at 70–71 (Pet. ¶¶ 360–65).

Plaintiff filed this case in Thomas County, Kansas. *Id.* at 5 (Pet.). Defendant then removed the case to this federal court. Doc. 1 (Notice of Removal). Defendant's Notice of Removal cites three grounds for removal—federal officer removal, federal question jurisdiction under *Grable*, and complete preemption. *Id.* at 3–25 (Notice of Removal). Plaintiff, in its Motion to Remand (Doc. 19), takes issue with all three jurisdictional bases. In the end, none of these bases persuades the court that its jurisdiction over this action is proper. So the court grants plaintiff's Motion to Remand (Doc. 19) and remands this case to Thomas County District Court.

---

²      Defendant attached two documents (in addition to the Petition) to its Notice of Removal. Doc. 1-1; Doc. 1-2. Defendant contends that the "key terms" of its agreement with the United States Department of Defense are located in these two documents. Doc. 1 at 5 (Notice of Removal ¶ 17); Doc. 1-1; Doc. 1-2.

2

## II. Legal Standard

"'Federal courts are courts of limited jurisdiction; they must have a statutory basis for their jurisdiction.'" *Dutcher v. Matheson*, 733 F.3d 980, 984 (10th Cir. 2013) (quoting *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1274 (10th Cir. 2012)). Under 28 U.S.C. § 1441, a defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (explaining that "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant"). "'This jurisdictional prerequisite to removal is an absolute, non-waivable requirement.'" *Hunt v. Lamb*, 427 F.3d 725, 726 (10th Cir. 2005) (quoting *Brown v. Francis*, 75 F.3d 860, 864 (3d Cir. 1996)).

## III. Analysis

Defendant's Notice of Removal invokes three bases for federal jurisdiction: federal officer removal, *Grable* jurisdiction, and complete preemption. Doc. 1 at 3–25 (Notice of Removal). The court concludes that it lacks jurisdiction under all three removal theories. So it remands this case to Thomas County District Court. The court takes defendant's removal arguments, in turn, starting with federal officer removal.

### A. Federal Officer Removal

"The federal officer removal statute permits removal of a state action that is against 'any person acting under' an officer of the United States 'for or relating to any act under color of such office.'" *Integris Health*, 123 F.4th at 1192 (quoting 28 U.S.C. § 1442(a)(1)). "The statute's purpose is to protect the federal government from 'state-court proceedings that may reflect local prejudice against unpopular federal laws or federal officials.'" *Id.* (quotation cleaned up) (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007)). Private persons—including

3

private corporations—"'who lawfully assist' federal officers" may invoke § 1442(a)(1), too. *Suncor Energy*, 25 F.4th at 1251 (quoting *Davis v. South Carolina*, 107 U.S. 597, 600 (1883)). To successfully invoke the federal office removal statute, our Circuit requires private defendants to show three things: "(1) they acted under the direction of a federal officer, (2) the claim has a connection or association with government-directed conduct, and (3) they have a colorable federal defense to the claim or claims." *Id.* (citations omitted). "Unlike other removal statutes," courts should liberally construe the federal officer removal statute "'to give full effect'" to its purpose. *Id.* (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)).

The court assumes without deciding that defendant—through its contract—was acting under the federal government and that defendant could assert a colorable federal defense to plaintiff's claims. That takes care of the first and third prongs.[3] But defendant's removal argument crumbles at the second element. Plaintiff's claims don't have the requisite "connection or association with government-directed conduct" to facilitate this case's removal. *Id.*

Our Circuit hasn't construed the breadth of this connection-or-association prong. But in *Suncor Energy*—a case dealing with all three jurisdictional bases that defendant invokes here—the Tenth Circuit cited approvingly a case from the Fifth Circuit and another case from the Fourth Circuit. 25 F.4th at 1251 (first citing *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 291 (5th Cir. 2020) (en banc); and then citing *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017)). So the court turns to those cases—along with recent cases from those circuits and others—for help construing and applying this prong.

---

[3] The first prong—acting under the federal government—nonetheless proves important in the court's analysis for two reasons. *First*, the "acting under" prong clarifies—by contrast—how courts have interpreted the connection-or-association prong. *Second*, the court relies on the "acting under" prong to conclude plaintiff's conspiracy allegations also don't provide a basis for removal.

4

The connection-or-association prong asks whether there is a "sufficient connection between the charged conduct and the asserted official authority." *Sawyer*, 860 F.3d at 258. A "civil action relating to an act [taken] under color of federal office may be removed." *Latiolais*, 951 F.3d at 292 (emphasis omitted). A couple examples help illustrate the line between those cases that satisfy the connection-or-association prong and those cases that do not.[4]

Take *Sawyer* for instance. 860 F.3d 249. There, plaintiff—the estate of a man who had died of mesothelioma—sued, among other defendants, a manufacturer who produced boilers for U.S. Navy ships. *Id.* at 251–52. The suit alleged that defendants "failed to warn [the deceased] of the dangers of asbestos, which was a component of the boilers." *Id.* at 252. The manufacturer—Foster Wheeler—invoked § 1442(a) to remove the case to federal court. *Id.* The Fourth Circuit held that this removal under the federal officer removal statute was proper. *Id.* at 259. On the connection-or-association prong, it explained that the

> record . . . show[ed] that the Navy was aware of the dangers of asbestos; that it required the use of asbestos in boilers for which it contracted with Foster Wheeler to manufacture; that it provided for a comprehensive set of warnings, but not all

---

[4] Plaintiff's opening brief references a causal-nexus test. Doc. 19 at 15. This "causal nexus" vernacular is a remnant from an old version of the federal officer removal statute. *Latiolais*, 951 F.3d at 291–92. The 1948 version of the federal officer removal statute contained this limiting phrase: "for any act under color of such office[.]" *Id.* (quoting 28 U.S.C. § 1442(a) (1948)). And the Supreme Court interpreted that version of the statute to require "a 'causal connection between the charged conduct and asserted official authority.'" *Id.* (quoting *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)). The modern—and current—version of the statute broadens this limiting phrase, allowing removal "for *or relating to* any act under color of such office or on account of any right[.]" 18 U.S.C. § 1442(a)(2) (emphasis added); *see also Latiolais*, 951 F.3d at 292 ("The amending legislation, the Removal Clarification Act of 2011, states 'Section 1442(a) of title 28, United States Code, is amended—(1) in paragraph (1)—(A) by striking "capacity for" and inserting "capacity, for or relating to."'" (quoting Pub. L. No. 112-51, § 2(b)(1)(A), 125 Stat. 545)).

Since Congress amended the federal officer removal statute, the Fifth Circuit—in a case cited by our Circuit, *Suncor Energy*, 25 F.4th at 1251—has explained that this statutory change "broadened federal officer removal to actions, not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Latiolais*, 951 F.3d at 292 (emphases in original); *see also Sawyer*, 860 F.3d at 258 ("This new language broadened the universe of acts that enable federal removal such that there need be only a *connection or association* between the act in question and the federal office." (emphasis in original) (quotation cleaned up)).

5

>possible warnings; and that Foster Wheeler complied with the Navy's requirements. Foster Wheeler's alleged failure to give warnings to Shipyard employees is therefore clearly related to Foster Wheeler's performance of its contract with the Navy.

*Id.* at 258. In short, the federal government all but required Foster Wheeler to perform the complained-of actions, so those actions "clearly related" to Foster Wheeler's "acting under" the federal government. *Id.*

*Plaquemines Parish v. BP American Production Co.* provides an example of conduct falling on the other side of the ledger. 103 F.4th 324 (5th Cir. 2024). There, "several Louisiana costal parishes" filed a series of lawsuits in Louisiana courts, alleging that defendants had violated a state resource management law. *Id.* at 329. The suits alleged that the oil and gas companies' operations—which involved "oil and gas exploration, production, and transportation"—violated a Louisiana statute by "failing to obtain necessary coastal use permits or by violating the terms of the permits they did obtain." *Id.* (internal quotation marks and citation omitted). Defendants removed the case. *Id.* at 331. They argued that their predecessor companies used some of the crude oil they produced "to comply with their World War II-era contracts with the government." *Id.* at 332.

The Fifth Circuit held that defendants satisfied the "acting under" prong of the federal officer removal statute. *Id.* at 334–35. The defendants "were federal contractors that refined a product . . . that the government needed to fight in World War II." *Id.* at 335. That production established "the necessary relationship with the government to satisfy the 'acting under' requirement." *Id.*[5]

---

[5] The connection-or-association prong and the "acting under" prong "may often ride in tandem toward the same result," but as *Plaquemines Parish* demonstrates, "they are distinct." *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 454 (5th Cir. 2021). A "defendant might be 'acting under' a federal officer, while at the same time the specific conduct as issue may not be 'connected or associated with an act pursuant to the federal officer's directions.'" *Id.*

6

But the *Plaquemines Parish* defendants' removal faltered at the connection-or-association prong. *Id.* at 335–43. The contracts at issue called for defendants to produce avgas, a refined crude oil product. *Id.* at 337–38. Meanwhile, the lawsuits challenged the defendants' upstream "oil production and exploration practices." *Id.* at 337. The Fifth Circuit acknowledged that these concepts were related, just not sufficiently so to satisfy the connection-or-association prong. Here's how the Circuit explained the difference:

> Defendants' federal contracts clearly pertain to their refinement of avgas and other petroleum products. But that is not to say that these refinery activities do not have some relation to oil production. This is of course because crude oil is a necessary component of avgas, and one way of obtaining crude oil is to produce it. However, . . . the relationship between Defendants' oil production and refinement activities was insufficient to satisfy the fourth element of federal officer removal. . . . Defendants fall short of meeting this requirement because . . . the contracts gave defendants complete latitude to forego producing any crude and instead buy it on the open market.

*Id.* at 340–41 (quotation cleaned up). As the panel explained, it "is not enough for Defendants to have 'act[ed] under' a federal officer if those acts were unrelated to the activities challenged in Plaintiffs' complaints." *Id.* at 335 (brackets in original).

All told, the relationship between defendants' contract here and plaintiffs' lawsuit looks much more like *Plaquemines Parish* than it does *Sawyer*. To be sure, the court recognizes—as have other courts—"that reasonable minds can differ on where to draw the line between related and unrelated conduct[.]" *Plaquemines Par.*, 103 F.4th at 342. Still, the court concludes that defendant here hasn't shouldered its burden to establish the connection-or-association prong for federal-officer jurisdiction.

As a starting matter, defendant's contract with the government includes a provision that expressly disclaims the government's authority over defendant's marketing efforts. Doc. 1-2 at 26 ("Pfizer and (its collaboration partners) shall have the right, but not the obligation, to prepare and submit scientific publications and release information to the public about its Covid-19

7

development program, without the Government's consent or involvement."); *see also* Doc. 1-3 at 15 (Pet. ¶ 60) (alleging that defendant "had exclusive control over its own communications"). This disclaimer means that the manner defendant used to market its vaccine to the public wasn't tethered to its contract with the federal government in any fashion. So, this case isn't like *Sawyer*, where the federal government required defendant to issue "a comprehensive set of warnings" that the plaintiff contended was inadequate. 860 F.3d at 258. Instead, the federal government here completely distanced itself from defendant's public communications about the vaccine. This case thus "fall[s] on the unrelated side of the line given the lack of any . . . . direction, pertaining to" defendant's marketing activities for its "federal contracts." *Plaquemines Par.*, 103 F.4th at 343.

Defendant counters that it contracted with the government "to provide a safe and effective vaccine" and that "the statements identified" by plaintiff's Petition are all "about the vaccine's safety and efficacy." Doc. 25 at 20. This argument holds some rhetorical appeal, at least at first blush. But this appeal withers on closer examination. Defendant's contracts with the federal government gave it "complete latitude" to market its vaccine and communicate with the public in any fashion it chose. *Plaquemines Par.*, 103 F.4th at 341. In fact, the case here against removal is even stronger here than in *Plaquemines Parish*, where defendants had performed the challenged action to enable them to fulfill their contractual duties to the federal government. Here, in contrast, defendant's challenged actions—allegedly false marketing practices—were entirely tangential to its contractual duty to produce and deliver vaccines to the federal government. In other words, defendant didn't perform its challenged marketing practices to fulfill its obligations to the federal government. Distinguishing its market practices from its

contractual obligations attenuates the link between defendant's contract with the government and plaintiff's claims.

Also, "the claims here do not challenge [defendant's] production and supply" of vaccines. *Anne Arundel County v. BP P.L.C.*, 94 F.4th 343, 349 (4th Cir. 2024). In other words, plaintiff's suit isn't based on defendant producing and selling a COVID-19 vaccine—the only conduct the federal government directed. Instead, plaintiff alleges that defendant "misled the public[,]" "concealed critical effectiveness information from the public[,]" "worked to censor speech on social media[,]" and "conceal[ed], suppress[ed], and omitt[ed] material information that undermined its safety and effectiveness claims." Doc. 1-3 at 5, 6, 9 (Pet. ¶¶ 1, 3, 5, 30). Because all the complained-of activities revolve around the manner in which defendant marketed and promoted its vaccine to the public—and not the manner in which defendant produced or sold the vaccine—"those activities fail to show the required relatedness." *Anne Arundel County*, 94 F.4th at 349; *see also Minnesota by Ellison v. Am. Petrol. Inst.*, 63 F.4th 703, 715 (8th Cir. 2023) ("The Energy Companies' production of military-grade fuel, operation of federal oil lease, and participation in strategic energy infrastructure, even if done at federal direction, bears little to no relationship with how they conducted their marketing activities to the general public. . . . the relationship . . . is too tenuous to support removal under § 1442." (internal quotation marks and citation omitted)).[6]

---

[6] Defendant tries to handwave these energy cases away, asserting that they involved "markedly different contracts" and that "the terms of those leases had no connection whatsoever to the allegedly misleading statements concerning pollution at issue in those cases." Doc. 25 at 16 & n.13. Granted, the contracts at play in these cases involved oil and gas leases. *E.g.*, *Anne Arundel County*, 94 F.4th at 349; *Ellison*, 63 F.4th at 715. But the important piece—which is salient here—is that the defendants' contractual relationships with the government were wholly divorced from their marketing practices. *Ellison*, 63 F.4th at 715–16; *Anne Arundel County*, 94 F.4th at 349. To be sure, the case against federal officer removal was arguably stronger in those—and similar—cases than it is here. For instance, in *District of Columbia v. Exxon Mobil Corp.*, the D.C. Circuit emphasized that "the complaint exclusively references statements that broadly relate to climate change, rather than to any specific activities conducted

The court recognizes that the pertinent statutory phrase—"relate to"—is a broad one. Recall that § 1442(a)(1) provides for removal when a person is acting under a United States officer "for or relating to any act under color of such office[.]"  "But broad language is not limitless."  *Watson*, 551 U.S. at 147; *see also Plaquemines Par.*, 103 F.4th at 342 ("[A]lthough we are mindful of the broad nature of the statute's 'relating to' language, as the Supreme Court has cautioned, even 'broad language is not limitless.'" (quoting *Watson*, 551 U.S. at 147)).  In other contexts, the Supreme Court has cautioned that though phrases like "relate to" and "connection with" are "clearly expansive[,]" courts shouldn't apply them with "an uncritical literalism" that would "turn on infinite connections."  *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146–47 (2001) (internal quotation marks and citations omitted).  So too here.  Courts shouldn't "stretch the 'relating to' requirement to permit the removal of cases where the defendant engaged in the challenged conduct of its own initiative in fulfillment of a tangentially related federal directive."  *Plaquemines Par.*, 103 F.4th at 343.  That's exactly what defendant attempts to do here.

Before moving on to *Grable* jurisdiction, the court addresses defendant's arguments on the connection-or-association prong.  Defendant insists that plaintiff's connection-or-association argument "makes no sense" because plaintiff has alleged that defendant conspired with the federal government.  Doc. 25 at 20–21 (citing Doc. 1-3 at 70–71 (Pet. ¶¶ 360–65)).  In other words, defendant argues for a shift in focus from the government contract to the alleged conspiracy.  Plaintiff, in response, contends that its Petition doesn't allege that the conspiracy

---

by the Companies in concert with the federal government." 89 F.4th 144, 156 (D.C. Cir. 2023).  But the D.C. Circuit also recognized that it wasn't dealing with a close call.  *See id.* ("We need not resolve the exact bounds of [the connection-or-association] standard . . . because under any reasonable interpretation, the District's suit is not 'for or relating to' actions taken by the Companies under color of federal office.").  In short, defendant is right.  These energy cases are different than this one.  Still, the court finds their analysis—which distinguishes between production and marketing—persuasive here.

10

was part of defendant's contract with the government or that the government required defendant to make any of its challenged statements. Doc. 26 at 5. Plaintiff also argues that that defendant wasn't "acting under" government direction when it engaged in the alleged conspiracy. *Id.* The court agrees with plaintiff—its conspiracy allegations don't furnish a basis for removal.[7]

Recall that the court assumed earlier in this Order that defendant could satisfy the "acting under" prong based on its contract with the government. Instead, the court concluded that defendant couldn't satisfy the connection-or-association prong (though the court admittedly used the "acting under" prong as a foil to so conclude). But the court's acting-under assumption doesn't hold true for plaintiff's conspiracy allegations. That is, even assuming that government agents conspired with plaintiff to promulgate false and misleading marketing statements, defendant wasn't "acting under" the federal government when it carried out that conspiracy. Here's why.

Our Circuit has explained that a "private firm must . . . agree to help carry out the duties or tasks of the federal superior under that superior's strict guidance or control" to satisfy the "acting under" prong. *Suncor Energy*, 25 F.4th at 1253. Here, neither the Petition nor any documents attached to the Notice of Removal suggest that the federal government exercised "strict guidance or control" over the alleged marketing conspiracy. *Id.* To the contrary, the Petition merely alleges that defendant "conspired with" the federal government and "had a meeting of the minds" with the Department of Health and Human Services. Doc. 1-3 at 70 (Pet. ¶¶ 361–62). Those allegations hardly suggest that any federal superior exercised "strict guidance

---

[7] The Petition alleges that defendant "conspired with two or more persons from the federal government and third-party businesses to willfully conceal, suppress, or omit material facts relating to" defendant's vaccine. Doc. 1-3 at 70 (Pet. ¶ 361). The Petition also alleges that defendant and the Department of Health and Human Services "had a meeting of the minds . . . to willfully conceal, suppress, or omit material facts relating to" defendant's COVID-19 vaccine. *Id.* (Pet. ¶ 362).

or control" over the alleged conspiracy (or over defendant's alleged marketing practices). *Suncor Energy*, 25 F.4th at 1253. So, defendant wasn't acting under federal authority when it allegedly conspired with federal actors and others to promulgate falsehoods about the COVID-19 vaccine. And that alleged conspiracy doesn't support removal.

Finally, defendant's citation to an unpublished opinion from the Sixth Circuit doesn't persuade the court, either. *See* Doc. 25 at 20 (citing *Goins v. Saint Elizabeth Med. Ctr., Inc.*, No. 22-6070, 2024 WL 229568, at *4 (6th Cir. Jan. 22, 2024)). In it, the plaintiff asserted "claims of negligence, battery, and negligent hiring against Moderna" and others. *Goins*, 2024 WL 229568, at *2. The Sixth Circuit concluded that federal jurisdiction was proper under the federal officer removal statute. *Id.* at *4. But—and this part is critical—the *Goins* plaintiff's claims were predicated on injuries she allegedly had sustained from the vaccine itself. *Id.* at *1–2. Not so here. Plaintiff doesn't premise its claims on the manner in which defendant produced, shipped, or administered its vaccines. Instead, plaintiff premises its claims on defendant's allegedly deceptive and illegal marketing tactics.[8]

Allowing defendant to remove this case to federal court "would permit a federal contractor with a non-frivolous federal defense to invoke federal jurisdiction under § 1442(a)(1) for conduct only remotely or tenuously related to its federal contracts and thereby impermissibly expand the scope of federal officer removal[.]" *Plaquemines Par.*, 103 F.4th at 343 (quotation cleaned up). That, the court cannot do.

---

[8] Defendant cites the government's briefing in an out-of-district case to support its position that the United States "has not wavered in its support of the vaccine." Doc. 25 at 20 (citing Motion to Intervene and Motion to Dismiss at 8, *U.S. ex rel. Jackson v. Ventavia Rsch. Grp., LLC*, No. 21-cv-00008 (E.D. Tex. Mar. 12, 2024), ECF 137). This argument is neither here nor there. Whether the federal government *believes* defendant's vaccine was safe and effective is immaterial to the court's jurisdictional determination.

None of defendant's arguments persuade the court that federal officer removal is proper in this case. With that much decided, the court moves on to the second basis defendant invokes for removal—*Grable* jurisdiction. The court concludes that *Grable* jurisdiction likewise isn't proper here either, explained below.

### B. *Grable* Jurisdiction

Defendant next invokes *Grable* jurisdiction. Doc. 1 at 17–22. *Grable* jurisdiction—or substantial federal question jurisdiction, itself a breed of federal question jurisdiction—is proper only if "'the federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Suncor Energy*, 25 F.4th at 1266 (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Defendant argues that plaintiff's suit challenges whether the FDA's approval of defendant's vaccine was proper, thus necessarily raising issues of federal law. Doc. 1 at 18–19. Alternatively, defendant contends, plaintiff's claims that defendant violated state court consent judgments, which expressly allowed defendant to make representations required by federal law, require the court to assess defendant's compliance with the FDCA and FDA guidance. *Id.* at 19–20. So, according to defendant, the court must construe federal law to determine whether defendant's allegedly false statements were ones that federal law requires. *Id.* The court isn't persuaded. Even assuming that either of these rationales necessarily raises a federal issue, neither is "substantial" within the meaning of the *Grable* test. So the court won't exercise jurisdiction on that basis.

"To satisfy *Grable*'s 'substantial' prong, 'it is not enough that the federal issue be significant to the particular parties in the immediate suit.'" *Suncor Energy*, 25 F.4th at 1268 (quoting *Gunn*, 568 U.S. at 260). Instead, "'[t]he substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole.'" *Id.* (quoting *Gunn*, 568

13

U.S. at 260).  Our Circuit has instructed that this "importance . . . can be evaluated by assessing whether the federal issue 'would be controlling in numerous other cases.'"  *Id.* (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)).  "'[F]act-bound and situation-specific'" claims "would not have this precedential effect and would be insufficiently substantial."  *Id.* (quoting *McVeigh*, 547 U.S. at 701).

Defendant argues that the federal issues presented in this case—for instance, "whether a corporation assisting the federal government in addressing a national public health emergency can violate state law when complying with the federal government's directives"—"are substantial questions with broad implications for the balance of state and federal power in our judicial system."  Doc. 25 at 29.  Not so.  Defendant hasn't identified any "concrete federal law or regulation that the case definitively implicates[.]"  *Suncor Energy*, 25 F.4th at 1268.  This shortcoming sounds the death knell for defendant's assertion of *Grable* jurisdiction.  *See id.* Defendant's references to "the federal government's policy response to a national emergency" and "federal decisions made during a national emergency" are too abstract to satisfy our Circuit's standard for this prong.  Doc. 25 at 29.  Defendant hasn't identified any federal law, regulation, or other directive that compelled it to promulgate the statements plaintiff challenges in this suit. So the court isn't sure which "concrete federal law or regulation" this case "definitively implicates[.]"  *Suncor Energy*, 25 F.4th at 1268; *see also Tufaro v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla.*, 107 F.4th 1121, 1142 (10th Cir. 2024) (explaining that a "trial court cannot be expected to read litigants' minds" (internal quotation marks and citation omitted)).

Even if defendant had shouldered its burden and identified a concrete federal law that this case implicates, defendant still can't establish that resolution of plaintiff's claims isn't "fact-bound and situation-specific[.]"  *Suncor Energy*, 25 F.4th at 1268 (internal quotation marks and

citation omitted). Any federal issues that this case presents aren't the sort of "pure issue[s] of federal law" or "context-free inquir[ies] into the meaning of federal law" that our Circuit requires to satisfy the substantiality prong. *Id.* (quotation cleaned up). In short, *Grable* jurisdiction fails here because defendant hasn't presented a compelling argument that any federal issue implicated by plaintiff's suit is "substantial" in the way that our Circuit and the Supreme Court demand. The court thus can't exercise jurisdiction on this basis

Defendant's final argument for federal jurisdiction—complete preemption—fares no better, as the court explains, next.

### C. Complete Preemption

In a last-ditch effort to keep this case in federal court, defendant invokes complete preemption. But the PREP Act doesn't completely preempt plaintiff's claims, so defendant can't remove those claims on this basis either. The court explains its reasoning, below. But first, a primer on complete preemption.

Federal district courts have original jurisdiction over federal-question cases: "cases 'arising under the Constitution, laws, or treaties of the United States.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting 28 U.S.C. § 1331). "Ordinarily, determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule." *Id.* (citation and internal quotation marks omitted). Under this rule, "a suit arises under federal law only when the plaintiff's statement of his own cause of action shows that it is based on federal law." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012) (citations and internal quotation marks omitted).

Typically, a federal defense cannot supply the federal question required by the well-pleaded complaint rule, and thus cannot create statutory federal question jurisdiction. *Id.*; *see also Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) (explaining that an

15

"anticipated defense" arising under the Constitution doesn't suffice to establish federal question jurisdiction). So as "a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). "There is an exception, however, to the well-pleaded complaint rule. '[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed." *Davila*, 542 U.S. at 207 (quoting *Anderson*, 539 U.S. at 8). "Complete preemption is a rare doctrine." *Suncor Energy*, 25 F.4th at 1257 (internal quotation marks and citation omitted). "The Supreme Court has recognized it in just three statutory contexts[.]" *Id.* And our Circuit has recognized it in one additional context. *Id.*[9]

Our Circuit applies a "two-step analysis" to "determine whether a state-law claim is completely preempted by federal law[.]" *Id.* at 1256. The first step asks "whether the federal question at issue preempts the state law relied on by the plaintiff[.]" *Id.* (internal quotation marks and citation omitted). The second step asks "whether Congress intended to allow removal in such a case, as manifested by the provision of a federal cause of action." *Id.* (internal quotations marks and citation omitted). "Because the first prong implicates the merits of an ordinary preemption defense," our Circuit requires courts to start with the second prong. *Id.*

With this background, the court turns to defendant's complete preemption argument here. Defendant argues that the Public Readiness and Emergency Preparedness Act (PREP Act) completely preempts plaintiff's claims, thus allowing removal. Doc. 1 at 22–25. Heeding our Circuit's instruction, *Suncor Energy*, 25 F.4th at 1256, the court starts with the second prong.

---

[9] "'[C]omplete preemption' is not the same thing as 'ordinary preemption.'" *Eaton v. Big Blue Healthcare, Inc.*, 480 F. Supp. 3d 1184, 1189 (D. Kan. 2020). "Complete preemption is a jurisdictional concept, while ordinary preemption is a defense to liability." *Id.* "Ordinary preemption does not render a state-law claim removable to federal court." *Devon Energy*, 693 F.3d at 1203 n.4 (internal quotation marks and citation omitted).

16

"To completely preempt, 'the federal cause of action need not provide the same remedy as the state cause of action.'" *Id.* (quoting *Schmeling v. NORDAM*, 97 F.3d 1336, 1343 (10th Cir. 1996)); *Devon Energy*, 693 F.3d at 1207 ("[M]irror-like symmetry between the federal and state remedies is not required to support a determination of complete preemption."). Still, "the federal remedy at issue must vindicate the same basic right or interest that otherwise would be vindicated under state law." *Devon Energy*, 693 F.3d at 1207; *see also Pirotte v. HCP Prairie Village KS OPCO LLC*, 580 F. Supp. 3d 1012, 1021 (D. Kan. 2022) ("[I]f the claim falls beyond the scope of the federal remedy, that federal cause of action cannot serve as the basis for complete preemption of plaintiff's state law claim.").

The PREP Act creates two federal remedies. *First*, the "PREP Act permits 'an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct[.]'" *Eaton*, 480 F. Supp. 3d at 1191 (quoting 42 U.S.C. § 247d-6d(d)(1)). The PREP Act defines "willful misconduct" as "an act or omission that is taken—(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." 42 U.S.C. § 247d-6d(c)(1)(A). And the PREP Act provides that courts must construe willful misconduct "as establishing a standard for liability that is more stringent than a standard of negligence in any form or recklessness." *Id.* at § 247d-6d(c)(1)(B).

*Second*, for "injuries not involving willful misconduct, the PREP Act establishes a 'Covered Countermeasure Process Fund,' which provides 'compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration.'" *Eaton*, 480 F. Supp. 3d at 1191 (quoting 42 U.S.C. § 247d-6e(a)).

Here, defendant argues that plaintiff's claims "could only have been brought" under the willful-misconduct provision. Doc. 25 at 32. The court disagrees.

The willful-misconduct provision doesn't "vindicate the same basic right or interest" that plaintiff seeks to vindicate with its state-law claims. *Devon Energy*, 693 F.3d at 1207. The PREP Act limits its willful-misconduct cause of action to injuries involving "death or serious physical injury[.]" 42 U.S.C. § 247d-6d(d)(1). But plaintiff's claims—which allege that defendant misrepresented information to the public—don't involve either death or serious physical injury. *See generally* Doc. 1-3 (Pet.). Defendant contends otherwise, asserting that plaintiff's Petition professes an "apparent belief that the COVID-19 vaccine is unsafe and physically injured recipients[.]" Doc. 25 at 33 (citing Doc. 1-3 at 20– (Pet. ¶¶ 92–205)). This argument falls short. Plaintiff's claims aren't based on any physical injuries or death. They're based on deceptive marketing, and that point alone ends the debate.

In short, the PREP Act's willful-misconduct cause of action doesn't "vindicate the same basic interest or right that would be vindicated under state law." *Devon Energy*, 693 F.3d at 1207. Plaintiff's claims—which allege deceptive and misleading marketing—are "too far removed from the interest that would be vindicated" under the PREP Act's cause of action. *Id.* So, defendant's complete preemption theory fails the second prong of our Circuit's test, and defendant can't remove this case on this basis, either.

But defendant persists, arguing that the Department of Health and Human Services published an advisory opinion supporting its position that the PREP Act is a complete preemption statute. Doc. 25 at 32. This argument, too, is bootless. Courts—including this one—routinely have rejected the authority of this HHS advisory opinion, because as the Seventh Circuit put it, its "reasoning is thin." *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210,

1214 (7th Cir. 2022); *see also Pirotte*, 580 F. Supp. 3d at 1029 ("[T]his court joins the other district courts that have unanimously concluded that the HHS's Advisory Opinion should not receive unfettered deference." (internal quotation marks and citation omitted)); *Khalek v. S. Denver Rehab., LLC*, 543 F. Supp. 3d 1019, 1026 (D. Colo. 2021) (explaining that the HHS Advisory Opinion "lacks the power to persuade" (quotation cleaned up)).

Defendant points out that the PREP Act expressly preempts some state-law claims. Doc. 25 at 31 (citing 42 U.S.C. § 247d-6d(b)(8)). That's true. But that's ordinary preemption, which is of no moment here. *See Suncor Energy*, 25 F.4th at 1261 ("[O]rdinary preemption can never serve as a basis for removal[.]" (emphasis omitted)). If anything, defendant's argument cuts against removal. *See Khalek*, 543 F. Supp. 3d at 1026 ("The Act itself thus provides only for conflict preemption. It does not confer Article III court jurisdiction over plaintiff's claims."). A court of competent jurisdiction—including the state court where plaintiff filed this action—can entertain any ordinary-preemption defense that defendant wishes to present. *See Suncor Energy*, 25 F.4th at 1267 (explaining that state courts are "presumptively competent to address federal issues, including federal defenses" (internal quotation marks and citation omitted)).

### D. Attorney Fees

Plaintiff's motion also requests attorney fees. Doc. 19 at 30. The court denies this request. The Supreme Court has instructed, absent "unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Defendant didn't lack "an objectively reasonable basis for seeking removal." *Id.* As the court has recognized already, "reasonable minds can differ" on the bounds of federal-officer removal. *Plaquemines Par.*, 103 F.4th at 342. In sum, the court agrees with plaintiff: This case belongs in

state court. But defendant's arguments to the contrary aren't frivolous. The court thus denies plaintiff's request for attorney fees.

## IV. Conclusion

Defendant offered three bases for federal jurisdiction—the federal-officer removal statute, *Grable* jurisdiction, and complete preemption. None persuade the court that it has the power to adjudicate this case. So, the court grants plaintiff's Motion to Remand (Doc. 19) and remands this case to the Kansas state court where filed.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion to Remand (Doc. 19) is granted. Plaintiff's request for attorney fees is denied.

**IT IS FURTHER ORDERED THAT** this case is remanded to the District Court of Thomas County, Kansas.

**IT IS SO ORDERED.**

**Dated this 13th day of May 2025, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**